Badger Lumber & Coal Co., Appellant, v. Paul H. Pugsley et al., Respondents.—61 S. W. (2d) 425.

Kansas City Court of Appeals.   May 22, 1933.

1204

*Arthur Johnson* and *Goodwin Creason* for appellant.

*E. B. Silvers* for respondents.

SHAIN, P. J.—The action herein was prosecuted as an action in equity to establish and foreclose a materialman's lien.

The trial court rendered a decree in favor of the defendants and against the plaintiff. Plaintiff duly appealed and cause duly sent to this court.

It appears from the record that Paul H. Pugsley and Jeanette M. Pugsley, his wife, owned by the entirety a parcel or lot of ground in Kansas City, Jackson County, Missouri, which they platted as a subdivision to the city. This suit involves lots 30, 31 and 32 of this sub-division which is known and designated as Broadmoor addition.

There was erected in this sub-division, during the years 1926 and 1927, thirty (30) or more dwelling houses.

The plaintiff's petition contains the following allegation:

"That the defendants Paul H. Pugsley and Jeanette M. Pugsley, his wife, being the owners of the following described real estate, to-wit: All of Lots Thirty (30), Thirty-one (31), and Thirty-two (32) in Broadmoor Court, a Sub-division of land in Kansas City, Jackson County, Missouri, as per recorded plat thereof, on or before July 8, 1926, entered into one entire general contract with the plaintiff, Paul H. Pugsley acting for himself as principal and as agent for Jeanette M. Pugsley, his wife, and for their mutual benefit, by and with the consent and approval of said Jeanette M. Pugsley for the purchase of lumber and building materials to be used in the construction and erection of one one-story frame dwelling with sleeping porch, and two one-story frame and stucco dwellings each with sleeping porch, to be built upon the above described land; that in pursuance of said contract the plaintiff between July 8, 1926, and March 31, 1927, both inclusive, did sell, furnish and deliver to said defendants, Paul H. Pugsley and Jeanette M. Pugsley, lumber and materials to be used and which were used in the construction of the above described improvements; that the prices charged for said lumber and materials were the fair and reasonable prices charged therefor, which said defendants Paul H. Pugsley and Jeanette M. Pugsley agreed to pay; that the amount of said indebtedness, after giving all just credits, is $2,026.14, particulars of which will more fully appear from the itemized statement and account which is hereto attached and made a part hereof; that demand has been made by plaintiff upon said defendants for payment of said indebtedness; that said account accrued and became due on March 31, 1927, which was the

date of the last delivery of building material by plaintiff as shown by said account; and that said account still remains unpaid.''

The pleadings present a clear statement of the material steps to be taken in proceeding to establish a mechanic's lien for material furnished. The plaintiff's right to recover in this action rests entirely upon the issue as to whether or not the facts presented in evidence establishes the agency of the husband, Paul H. Pugsley, to act for his wife, Jeanette M. Pugsley, so as to subject her interest in the estate owned by the entirety to the lien herein sought to be established and foreclosed.

It will be noted that the plaintiff designates the contract upon which the claim is asserted as ''One Entire General Contract.'' It appears that the plating of the sub-division was a development scheme wherein quite a number of houses were being constructed and placed on the market to prospective buyers. There appears to have been no written contract with the plaintiff for the furnishing of the material for the project. It appears that, after suit brought but before trial, Paul H. Pugsley died and the suit was duly revived against his heirs Jeanette M. Pugsley and Madeline M. Pugsley.

It appears from the record that the contract was entered into with plaintiff by Paul H. Pugsley alone, but is alleged that he also acted on behalf of his wife. The only evidence in the record as to the contract is admissions of Paul H. Pugsley that he had contracted with plaintiff to furnish the material for the project. The evidence is to the effect that plaintiff did furnish the lumber and material stated in the account in evidence.

It is alleged in plaintiff's petition that the material involved was sold and furnished between July 8, 1926, and March 31, 1927, and the evidence is to that effect.

It is shown by the record that Paul H. Pugsley and his wife executed mortgages on each of the houses in question and that what is termed construction mortgages were executed by the husband and wife. The holders of these mortgages are made parties defendant herein and plaintiff is asking for a lien superior to these mortgages.

The appellant, hereinafter referred to as plaintiff, urges in its briefs filed that the language of its petition, above set forth, pleads estoppel. The plaintiff presents that Jeanette M. Pugsley, the wife of Paul H. Pugsley, by her activities touching the project in hand by her acts and conduct so ratified the acts of her husband as to be estopped from being heard to say, that her husband was not acting as her agent and in her behalf in the buying of the materials used in the construction of the houses in issue. The appellant admits that the agency claimed was not such as entitles plaintiff to a personal judgment against the wife but, ''that Paul H. Pugsley entered into the contract in question, not only for himself, but

for his wife *to the limited extent* of binding her property for the payment for the materials used in the construction of the buildings . . .'' (Italics ours.)

As to the plaintiff's pleading being sufficient as a plea of estoppel, we conclude not.

It is a general rule that if allegations amount to an estoppel it is sufficient. [Cadematori v. Gauger, 160 Mo. 352.]

Estoppel, though very indefinitely plead, is good if no objections are made by demurrer or motion to make more definite. [Olden v. Hendrick, 100 Mo. 533.] There is nothing in the record of this case from which we can conclude that plaintiff was urging that it had plead estoppel until such presentation was made in one of its briefs filed herein.

We see nothing in the pleading that brings this case within any exception to the general rule that estoppel must be plead with particularity and precision.

In the case of Marshall, et al. v. Hall et al., 200 S. W. 770, there is reported a case where the husband contracted to construct improvements that were made on the real estate of the wife. The pleadings in the Marshall case are very similar to those in the case at bar. The grounds urged therein by the plaintiff are practically the same as herein. In other words, the plaintiff was urging therein agency of husband based upon ratification. In that case on appeal the lien was refused and in closing the court uses this language: ''If plaintiffs desire to rely upon estoppel, they should plead the facts relied upon therefor.''

The plaintiff, in the case at bar, pleads as an assertion of fact that the husband contracted as the agent of the wife. The pleader nowhere pleads that the husband made the contract and that the wife thereafter by her actions and conduct became estopped to deny the husband's agency.

While we conclude that no estoppel is plead, still there is evidence shown in the record that though not admissible to prove estoppel when the same had not been plead, still the same should be given consideration and weight touching those matters that are by the pleadings put in issue, that is as to whether or not there was an implied contract as to the wife.

In the text (R. C. L. 902) it is said: ''Though there may have been no original agency, there may be such express or implied ratification of the husband's contract as to render a married woman's land liable for the improvements made thereon.''

The rule has been announced in this State, that ratification to be relied on must be plead. However, LAMM, J., in an opinion (Lipscomb v. Talbott, 243 Mo. l. c. 28) criticizes the rule with very persuasive argument. While we conclude that ratification has not been

specifically plead, still the fact that there may be evidence in the record bearing upon that issue of ratification that was not specifically objected to, we conclude to give full consideration to this testimony for whatever purpose it may serve in the determination of the equities in the case.

As before stated, plaintiff contends that the acts and conduct of the wife concerning the construction program in the sub-division that is presented in the record establishes the fact that her husband was her agent to the extent of subjecting her property to the lien.

The plaintiff cites a long line of Missouri cases in support of its contention. The cases cited, with the exception of two, one dealing with equitable title and one with partnership, are cases where contracts are made by a husband for construction of improvements on the real estate of the wife. Some of these cases cited date back before the married woman's act and some since. The original conclusions reached in all are practically the same except as to differences due to conditions prior to and after the passage of the married woman's act.

In Chicago Lumber Co. v. Mahan, 53 Mo. App. 425, it is held: "To make a married woman's real estate liable to mechanic's lien, the contract for the improvements must be made with her or her authorized agent; and, the agency of the husband must be made to appear by showing he acted for the wife."

In the case of Burgwald v. Weippert et al., 49 Mo. 60, the husband had constructed a house on the wife's land, it was held to be to her use and under the provisions of Section 21, chapter 195, General Statutes 1865, the lien was declared to attach to the land but no personal judgment allowed against the wife. The decision being based upon the language of the statute to-wit: "Every person, including *cestui que trust*, for whose immediate use, enjoyment or benefit, any building, erection or improvement shall be made, shall be included, by the words, owner or proprietor thereof, under this chapter, not excepting such as may be minors over the age of eighteen years or married women."

In the case of Boeckeler Lumber Co. v. Wahlbrink, 177 S. W. 741, this situation is presented; the husband without the consent of the wife but with her knowledge erected a house to be used as their home on a lot that belonged to the wife. She did not let her objection be known to anyone outside of the husband. She joined in the execution of a trust deed to secure money for the work. Such conduct on her part was held to establish her husband's agency for her to subject her lot to the claims of a mechanic's lien. The court holding that under such a state of facts she was estopped as a matter of law to deny the agency. Estoppel appears to have been plead in the above case.

The case of Berkshire et al. v. Holcker et al., 216 S. W. 556, presents another case where the husband contracted for construction of

improvements on his wife's land. In the Berkshire case above, TRIMBLE, J., in the opinion quotes from Knenzel v. Stevens, 155 Mo. l. c. 287, what seems to clearly state the law in cases where a husband contracts for improvements on his wife's real estate. The quotation is as follows:

"Undoubtedly a husband may make a contract in his own name and on his own credit to improve his wife's property without rendering it subject to a mechanic's lien for the cost. But when a party has furnished materials towards the building, and the question as to his right to a lien depends on the fact as to whether the husband undertook the work on his own credit or that of his wife for whose benefit the improvement inures, there is no reason why the question should not be settled by a fair preponderance of the evidence; the burden of proof, of course, being upon him who asserts the agency, and due caution being observed to distinguished between wifely deference and business conduct, when inferences from her acts are to be drawn."

There are other cases of similar import cited in appellant's brief. The ones herein commented on, however, suffice to clearly state the law applicable to such cases.

The well established law in Missouri concerning contracts for improvements on real estate and the resulting right for a lien therefor is, that the contract must be with the owner in person or with his agent, trustee or subcontractor. It is also well established that the agency may be express or implied from the conduct and acquiescence of the owner from all facts and circumstances, which estop him from denying the agency.

The rule of our courts prior to the enactment of the Married Woman's Act was based upon the old Wagner statute, wherein a lien was permitted where the husband made improvements on the wife's real estate that inured to her use and benefit.

The rule as to improvements made by the husband on wife's real estate since the enactment of the Married Woman's Act seems to be well stated in the quotation from the Knenzel v. Stevens case, supra.

The case at bar presents a situation that is not in the above class of cases. A married woman has the legal right to forbid improvements being made on her land. She can exercise her choice as to whether a house be built thereon and if she stand idly by and sees valuable improvements that will inure to her benefit, it takes but little evidence to burden her with an implied contract. The case at bar presents a condition where the husband and wife hold by the entirety. During coverture any act affecting title must be by joint act. The husband by no act of his alone can subject the real estate to the burden of a mechanic's lien. [Goldberg Plumbing Supply Co. v. Taylor, 237 S. W. 900; R. D. Kurtz v. Field, 14 S. W. (2d) 11.]

Notwithstanding the above, the husband has absolute right in his own behalf to erect houses on the land held by the entirety. There

is vested in the wife no power to stop the husband from the exercise of this right. We do not wish to be understood as holding that the acts of a wife in such instance could not be pronounced as to subject her interest to the lien. However, in the consideration there are some things that might be inferred when she owned the lands, had control concerning whether the construction should be made and where what was being done was to her use and benefit, that might not be drawn where the party doing the construction had right in his own right and wherein she had no power to prevent.

The evidence relied upon in this case to establish the husband's agency is somewhat meager. A Mr. Paddock, foreman of construction, testified: "She instructed me to keep heavy trucks off the street." He testified further that she carried messages to him which purported to be from her husband and that these messages were concerning the three houses. He further testifies that he saw her showing the houses in question to prospective purchasers. C. C. Balis, an employee of the Pioneer Trust Company, testifies as to the facts of execution of mortgages by Pugsley and wife and that same were construction mortgages, money payable as work progressed. He further testifies to execution of personal bond against filing of liens. The bond contained the following: "The intent thereof is that no mechanic's lien shall be enforced or shall stand upon the record to weaken or threaten the security of said loan." One, Viets, testifies that the wife and husband sometimes together and sometimes one and sometimes the other selected paper for the houses being constructed in the project. He testifies that the wife was active in the selection. Mr. Littrell, a salesman for the plaintiff, testifies as to the wife showing the houses in question to prospective buyers. There is some testimony, that in other houses than those in issue, the wife gave some instructions concerning matters of construction. There is testimony further that the wife joined in a deed to trustee when some difficulty arose concerning the husband's health and other matters.

We have fully outlined the acts and conduct of the wife as detailed in the evidence. These acts and incidents mentioned are urged as a ratification of the "one entire general contract," sufficient to establish that her husband was her agent *to the limited extent of binding her property, etc.* (Italics ours.)

We cannot conclude that ratification has been plead, however, we consider the testimony on the issue as to whether or not the evidence of the wife's acts presents such an acquiescence on her part as establishes an implied contract as to her. The application of the evidence as to acquiescence bears such an analogy to ratification that practically the same rule as to construction should be followed as in ratification.

Acts relied upon for ratification, as a matter of law, must be such that but one inference can be drawn therefrom. Acts susceptible of different inferences raises an issue of fact. The burden is upon one who asserts ratification to prove same. One against whom ratification is charged is entitled to all favorable inferences rightfully inferable from the act presented in evidence. Considering the evidence from this standpoint, we conclude that as to the evidence to the effect that the wife carried messages from the husband concerning the construction, the inference can be fairly drawn that she was not active in the matter of construction. If active, she could have given instructions for herself.

The evidence of showing houses to prospective buyers is not of sufficient weight that it can be inferred therefrom that she had directly or indirectly authorized her husband to subject her property to a lien. The wallpaper incident falls far short of showing any implied contract for purchase of lumber and material for construction, or that her husband was constituted her agent to the extent of subjecting her property to a lien, for material purchased from the plaintiff.

The act of execution of trust deed by a wife to erect or complete improvements on her individual land raises a very strong inference supporting ratification of contract that had been made by the husband for the improvements. The instance of the execution of these trust deeds in evidence in this case presents itself as worthy of consideration in determining the issue presented. However, there is so little shown in the record concerning the relative acts of the husband and wife touching the execution of the one entire general contract, that we feel it our duty to give to the wife's act the benefit of any other reasonable intendment that might be reasonably inferred from the act when taken in conjunction with other acts bearing relation thereto, that would be consistent with other purpose than that of subjecting her property to the materialman's lien. We may infer her act as arising from wifely duty or as an act to help her husband in the accomplishment of a purpose not coupled with her own. The execution of the bond to not permit a lien to lodge gives rise to an inference that the wife was not authorizing her husband to act for her to the limited extent of subjecting her property to a lien. There is strong evidence in the case from which it can be inferred that the husband undertook the work on his own credit. Before a lien can be placed on an estate by the entirety, the evidence should be strong and persuasive evidence to the effect that the act that subjected the land to lien was the joint act of the tenants by the entirety. The plaintiff had constructive notice of the state of the title. There seems to have been no effort on the part of the plaintiff to give any consideration for the wife in the making of the contract and the evidence

offered is susceptible of other conclusions than that of subjecting her property to the lien.

We, therefore, conclude that the facts offered in evidence are not enough to subject her property to the lien sought to be established and foreclosed. It is therefore the judgment and decree of this court, sitting as a court of equity, that the lien has not been established and that there is no lien established on either the improvements or real estate in issue.

The judgment is affirmed. All concur.