THE J. R. WATKINS COMPANY, a Corporation, Appellant, v. J. L. LANKFORD and T. J. SANDERS, Respondents, No. 43415—256 S. W. (2d) 788.

Court en Banc, April 13, 1953.

*J. Grant Frye* and *Gerald B. Rowan* for appellant.

*C. A. Powell* for respondent T. J. Sanders.

HYDE, J.—This is an action on an account for merchandise sold to John Baker (one of the defendants sued herein) under the terms of a dealer's contract, payment of which was guaranteed by the other defendants as his sureties. The jury's verdict was against Baker for $640.34 without interest and in favor of the other defendants. On

plaintiff's appeal, the Springfield Court of Appeals reversed and remanded with directions to enter judgment against all defendants for $640.34 with interest thereon at 6% from May 28, 1940. (J. R. Watkins Co. v. Lankford, 250 S. W. (2d) 798.) We transferred the cause on application of defendant Sanders.

Much of the evidence is set out in the opinion of the Court of Appeals. (See also opinion on former appeal, J. R. Watkins Co. v. Baker, 236 S. W. (2d) 745.) Defendants' evidence was that their signatures as sureties were obtained by fraud by Baker and Paul Corbin, who was with him when Sanders signed, saying the paper was only a recommendation. In the case of Sanders (who is the only defendant now contesting plaintiff's right to judgment) Baker and Corbin drove out to his home and found him in the driveway. Baker got out first and asked Sanders to sign (saying it was a recommendation) while Corbin remained in the car. (Baker said he had never read the document but took Corbin's word for what was in it.) Sanders said, after he had talked with Baker, "he (Corbin) got out and said that he wanted me to sign this recommendation for Mr. Baker to sell Watkins' products and I said that I didn't have my glasses and couldn't read without them and I said that I didn't want to sign anything that would hurt me in any way and he said there was nothing there that would hurt me and that it was just a recommendation for Mr. Baker." Sanders then signed without going into the house for his glasses. Baker's contract and the suretyship agreement were both printed on one long (legal size) sheet of paper. Defendants' evidence showed that Sanders could not read without his glasses, but had 20-20 vision with them.

Plaintiff's evidence was that it wrote letters dated March 28, 1939, to each of the sureties on Baker's contract (dated March 25, 1939 and terminating April 1, 1940) which were sent by registered mail with directions "Deliver to addressee only. Personal receipt required." The letter to Sanders said: "We are pleased to inform you that we have received and accepted the Agreement of Mr. John Baker dated March 25, 1939, which you signed as surety, together with Louis Wilkerson and J. L. Lankford." Plaintiff had a registered mail receipt, dated April 6, 1939, signed "T. J. Sanders." However, Sanders denied receiving the letter and said he did not think the signature on the receipt was his signature. We must, of course, consider that the jury found against plaintiff on the fact issues.

The first question is whether the fact that the suretyship agreement was fraudulently misrepresented to Sanders by the principal Baker, and also by Corbin, as only a recommendation, is any defense to plaintiff's action on the agreement. Of course, as authorities hereinafter referred to hold, that would be a defense if either Baker or Corbin were agents of plaintiff to make the contract. However, as hereinafter shown, defendants had no substantial evidence of such

agency. The Court of Appeals followed its previous decision in General Motors Acceptance Corporation v. Holland, (Mo. App.), 30 S. W. (2d) 1087, in which it said in a similar case: ''The evidence fails to indicate that plaintiff had knowledge of such deception or the circumstances under which defendant signed the guaranty. It therefore should not be made to suffer the loss brought about by defendant's blind trust in another. The old equitable rule is applicable that, where one of two innocent parties shall suffer by reason of the fraud of a third person, the one who permits himself to be deceived and thus puts it in the power of such third person to defraud another should be the loser rather than the latter.'' The great weight of authority is in accord with this statement of the rule. (See 50 Am. Jur. 1015, Sec. 170; Annotations 66 A.L.R. 315, 71 A.L.R. 1278; Restatement of Security, Sec. 119; Restatement of Contracts, Sec. 477; 24 Am. Jur. 904, Sec. 45; 38 C.J.S. 1172, Sec. 32; 4 Williston on Contracts 3573, Sec. 1248; Spencer on Suretyship, Sec. 55; 40 Columbia Law Rev. 1230. See also J. R. Watkins Co. v. Oldfield, (Mo. App.) 168 S. W. (2d) 595; J. R. Watkins v. Oldfield, 351 Mo. 894, 174 S. W. (2d) 142.)

The rule is thus stated in Restatement of Security, Sec. 119: ''Where the surety by fraud or duress of the principal has been induced to become bound to the creditor, the fraud or duress is not a defense against the creditor, if, without knowledge of the fraud, he has extended credit to the principal on the security of the surety's promise or, relying on the [791] promise, has changed his position in respect of the principal.'' The following illustration is given: ''P induced S to sign an instrument guaranteeing an extension of credit by C to P. S had an opportunity to read the instrument but did not do so and relied upon P's representation that it was a letter of recommendation. P exhibited the instrument to C, who extended the credit without knowledge of P's fraud. S is liable to C.'' That illustration fits this case completely. Sanders could have gone into his house, got his glasses and read the agreement before he signed it, or he could have had it read to him. There is no evidence that plaintiff had any knowledge of the alleged misrepresentations. Thus there are no facts in evidence to show that the general rule should not apply in this case.

Defendants rely on J. R. Watkins v. Thompson, 230 Mo. App. 482, 93 S. W. (2d) 1100 and Gate City National Bank v. Bunton, 316 Mo. 1338, 296 S. W. 375. The facts in the Thompson case were very different as we pointed out in the Oldfield case, supra. (174 S. W. (2d), l.c. 143.) In the first place, ''the full debt sued for in this case was past due when defendant Watkins (surety therein) signed his name.'' Thus plaintiff therein had not ''extended credit to the principal on the security of the surety's promise'' as required by the rule stated in Sec. 119, Restatement of Security. Furthermore, the age and physical condition of the surety was very different as he was apparently an invalid afflicted with hardening of the arteries, heart disease.

prostate gland and kidney trouble and was unable to read because of cataracts affecting both eyes. The real basis of the equitable rule applied in these cases is in the nature of an estoppel against the surety who had an opportunity to read the instrument but did not do so; and it is his negligence in failing to do what it was reasonable for him to have done that is the basis of the estoppel. Of course, this rule could not be applied to the same extent against a blind man, or an illiterate man who could not read, because he would have to rely on another to read it to him. (See discussion in the Thompson case, 93 S. W. (2d), l. c. 1103, citing Daniel on Negotiable Instruments, Sec. 847.) Thus the Thompson case is not authority for defendants' contention in this case.

In Gate City National Bank v. Bunton, supra, the suit was on Bunton's $25,000.00 note made to and held by the bank. It was endorsed on the back by the two defendants who contested their liability. Each was separately asked to endorse it by Bunton. On each occasion, Bunton exhibited a $5,000.00 note payable to the bank signed by him; then, after the prospective endorser had read it, while obtaining the pen from the desk for his signature, Bunton substituted the $25,000.00 note. While being endorsed on the back, the face of the note was not visible and neither endorser looked at the note again after endorsing it. The Court recognized the rule that, where one of two innocent parties must suffer by the act of a third, the one whose act enabled such third person to cause the loss must sustain it. However, the Court said: "The liability, if any, of one whose signature is obtained to a negotiable instrument in the manner in which defendants aver that theirs were obtained to the note in suit, arises solely from negligence, and not otherwise. If there was no negligence, there is no liability." The Court held that, under the circumstances of that case, there was a jury question as to whether, in endorsing the note, the defendants were in the exercise of ordinary care. There negligence as a basis for estoppel was a jury question because the endorser had read the note once and the reasonable appearances were that he was endorsing the note he had read. The authorities overwhelmingly hold that is not true in a case like this where the surety did not even attempt to read the instrument at all before signing or delivering it, although there was nothing to prevent him from doing so. We, therefore, hold defendant Sanders cannot make the defense of non est factum in this case.

The contract between plaintiff and Baker is in the record and clearly does not create the relation of principal and agent but provides only for sale of merchandise to him at wholesale prices for a period of one year. It appears that Corbin had the same kind of contract with plaintiff. [792] (Each contract was limited to specified territory.) As to the status of Corbin with plaintiff, both Baker and Sanders said all they knew about it was what Corbin told them. The Court of Ap-

peals correctly held (250 S. W. (2d), l.c. 801) ''neither the fact nor scope of agency can be established by the mere out of court declarations of the alleged agent.'' (See cases cited by the Court of Appeals; see also Restatement of Agency, Sec. 285.) Furthermore, defendants' testimony contains little more than witnesses' conclusions as to Corbin's status. It was shown that plaintiff offered a cash payment of $50.00 (plaintiff called this a cash prize) to any dealer, with whom it had a contract (such as the one Baker had), for procuring a new dealer's contract for unoccupied territory and that Corbin had received a total of $750.00 for 15 dealer contracts by July 1939. Corbin had interested Baker in signing his contract, telling him that Mississippi County was open territory. Corbin then assisted Baker in preparing his first order and sending it to plaintiff's Memphis, Tennessee, branch office, after Lankford and Wilkerson had signed as sureties but before Sanders signed. (The first two signed on Saturday, March 25, 1939, and Sanders signed on Monday, March 27th.) The goods were shipped to Baker from Memphis on March 28th. It was also shown that a sales manager from plaintiff's Memphis branch later held a meeting at Poplar Bluff for those selling its products, which Baker attended, and made the statement that Corbin was his leading man. Plaintiff's publication of July 1939, put in evidence by defendants, lists both Baker and Corbin as dealers. It was also shown that, after Baker's house burned in December 1939, Corbin told Baker certain goods saved from the fire could not be returned to the company. (There was a provision in the contract for repurchase of unsold merchandise in good condition on termination of·the contract.) Corbin did not testify at the trial.

Our conclusion is that this evidence is insufficient to establish the relation of principal and agent between plaintiff and Corbin, with authority to make any representations concerning the subject matter of the contract, at the time Sanders signed as surety. At most, it only shows that plaintiff paid him for a completed result; that is, sending in a signed contract on plaintiff's printed form for its acceptance. Thus his status would be in the nature of an independent contractor. (See Restatement of Agency, Sec's. 2, 4 and 220; Mechem on Agency, Sec. 40; 27 Am. Jur. 504, Sec. 27; Vert v. Metropolitan Life Ins. Co., 342 Mo. 629, 117 S. W. (2d) 252.) This could give him no authority to negotiate a contract, accept it for plaintiff, ϟary its terms or make representations about its contents or effect. ''If * * * the making of any representation concerning the subject matter could not be deemed to be within the scope of the authority, then obviously the making of false or fraudulent ones cannot be; and responsibility for them will not attach.'' (Mechem on Agency, Sec. 1988.) ''An agent * * * holds a power to alter the legal relations between the principal and third persons'' and is subject to the principal's right of control of his conduct with respect to matters entrusted to him. (Restatement

of Agency, Sec's. 12 and 14.) We find no substantial evidence of such authority or control in this case. We, therefore, hold that defendants, who signed as sureties, showed no defense to plaintiff's claim and the Court should have directed a verdict for plaintiff.

Baker admitted at the trial that he owed plaintiff the amount of $640.34. However, as heretofore noted, the verdict was for that amount without interest. After this verdict, plaintiff filed a motion "to set aside the jury verdict in favor of defendants J. L. Lankford and T. J. Sanders and to render verdict in favor of plaintiff and against defendants T. J. Sanders and J. L. Lankford in accordance with plaintiff's motion for directed verdict against said defendants made at the conclusion of all the evidence." Plaintiff also filed in the alternative a motion for new trial praying "for a new trial against defendants T. J. Sanders and J. L. Lankford." Plaintiff filed no motion asking any relief at all against Baker or for any different judgment [793] against him; and neither of its motions specifically mentioned the matter of a judgment for interest against any party. After these two motions were overruled, plaintiff filed a notice of appeal "from the judgment against plaintiff and in favor of defendants T. J. Sanders and J. L. Lankford." Sec. 512.160 (1) RSMo 1949 VAMS provides: "No allegations of error shall be considered in any civil appeal except such as have been presented to or expressly decided by the trial court." Since no claim of error in this verdict and judgment as to Baker was made to the trial court, and plaintiff limited its appeal to the judgment for the sureties, the matter of interest has been waived and abandoned. Thus the judgment for $640.34 without interest has become final as to Baker, and his liability is finally fixed by it.

"Since the obligation of a surety is accessory to that of a principal debtor, it follows as a corollary that the liability of the surety is ordinarily measured by the liability of the principal, and cannot exceed it. So, generally, the surety is not liable if the principal is not." (50 Am. Jur. 921, Sec. 30; See also 72 C.J.S. 567, Sec. 87, p. 734, Sec. 277c; Stix, Baer & Fuller Dry Goods Co. v. Ottawa Realty Co., 273 Mo. 376, 202 S. W. 577; State ex rel. and to use of Scarborough v. Earley, 240 Mo. App. 868, 219 S. W. (2d) 879; State ex rel. and to use of Gieringer v. Kilgore, (Mo. App.), 238 S. W. (2d) 874; Restatement of Security, Sec. 139.) Comment a, Sec. 139 Restatement of Security, states: "If judgment is rendered for the principal in an action against him by the creditor, this judgment is conclusive as to the principal's non-liability in an action by the creditor against the surety. If judgment is rendered for the creditor only for part of his claim, the judgment is conclusive against the creditor as to the principal's non-liability for that portion by which the creditor's claim is reduced." Thus it is clear that plaintiff is not entitled to a judgment

1054

against the sureties for interest from May 28, 1940, as ordered by the Court of Appeals.

The judgment for the sureties is reversed and the cause remanded with directions to enter judgment against them for $640.34 with interest at 6% from the date of the judgment against their principal, namely, April 18, 1951. All concur.