**DIERKS & SONS LUMBER COMPANY,**
Appellant,

v.

**Keith MORRIS et al., Respondents.**

No. 24323.

Kansas City Court of Appeals.

Missouri.

June 6, 1966.

---

· Gene A. DeLeve and Casemore, Berman & DeLeve, Kansas City, for appellant.

Thomas M. Sullivan, Downey, Sullivan & McCormick, Kansas City, for respondents.

L. F. COTTEY, Special Judge.

Plaintiff is a corporation engaged in the manufacture and sale of prefabricated houses. It sold such a house for erection at 207 Morningside Terrace, Richmond, Missouri, at an agreed price of $7,250.16, and, when the account went unpaid, brought this action to impress a materialman's lien on the premises. Although there are a number of defendants with peripheral interests in the litigation, our principal concern is with but two of them, the Morrises, since it is conceded that the controlling issue is whether Mrs. Morris "had constituted her husband her agent, to act for her as well as for himself, in his dealings relating to the erection of the house upon their jointly owned property." It is not contended that the alleged agency was an express one. On the contrary, plaintiff's position is that it arose by implication of law, or, to the same end, that it existed in legal effect by reason of Mrs. Morris's estoppel to deny it, or by reason of her ratification of her husband's acts. The trial judge, to whom the cause was submitted without a jury, ruled that issue adversely to plaintiff. We have reviewed the record in conformity with Civil Rule 73.01 (d), V.A.M.R. and have concluded that the alleged agency, if it ever existed in fact or in legal effect, must depend for its proof on the following circumstances.

Defendant Keith Morris had for some time been engaged as a "contractor" in the business of acquiring unimproved lots and erecting prefabricated homes thereon for resale. Mrs. Morris's occupation was described simply as "housewife". She had no investment in her husband's business and no role in its management, so far as the record discloses.

Sometime prior to May 19, 1962, Mr. Morris contracted to buy the lot in Richmond for $1,000, and thereafter accepted a deed to it in his name ·and his wife's as tenants by the entirety. Mrs. Morris did not participate in those negotiations. Promptly thereafter Mr. Morris placed a written order with plaintiff for the house in question, reciting that it would be erected on the newly acquired lot. He described himself in that order as the "buyer", and directed that the house components be delivered to him at the building site. Mrs. Morris did not sign the order and is nowhere mentioned in it. All of plaintiff's records in connection with the transaction were carried in the name of Mr. Morris alone.

At about the same time Mr. Morris made application for an FHA insured "end loan" on the property; that is, a loan to

be made when the improvement was completed. He described himself in that application as the "builder". Mrs. Morris neither signed nor was mentioned in it; although some ten months later, when the loan was actually made, she joined her husband in executing the note and deed of trust securing it.

Meanwhile, it was necessary to obtain interim financing of the project in order for construction to proceed. Accordingly, Mr. Morris applied to Home Savings & Loan Association of Hardin for a $10,000 "construction loan" on the premises. Mrs. Morris signed that application with him, and, when it was approved, both of them signed the note and deed of trust securing it. The proceeds of the loan were retained by the lender, however, to be paid out on Mr. Morris's requisition from time to time as construction progressed; and over a period of several months the money was paid out in that fashion to various workmen and suppliers, including the seller of the lot, until the entire proceeds were exhausted together with an additional "advance" of $1,000. Mrs. Morris did not participate in any way in those disbursements; the lender, in all aspects of the transaction, "dealt exclusively with Keith Morris". Unfortunately, none of the money was ever paid to plaintiff, for reasons now to be examined insofar as the record supplies them.

On the day following approval of the construction loan, the order previously placed by Mr. Morris came to the attention of plaintiff's credit manager. That officer instructed an employee to find out "how the package would be paid for". The employee called Home Savings & Loan Association, identified the lot by number but not the owners by name, advised the Association that plaintiff was furnishing the house to be erected on it, and inquired if a construction loan for the project had been made. The answer was that it had. Only that and nothing more. No inquiry was made and no information divulged as to the amount of the loan, or by whom it had been negotiated, or whether its terms included a provision for the payment of plaintiff's account, so far as the record discloses. Only the skeletal fact of the loan's approval was reported to the credit manager. He fleshed it out with imagination: he "assumed" that the account would be paid from the loan proceeds, and he "relied" on that assumption in accepting the order on plaintiff's behalf. The assumption turned out badly. But neither its inspiration nor its disappointment can be ascribed to Mrs. Morris. She did not induce it by any act on her part of which plaintiff had knowledge, and she did nothing to frustrate it. The fact is that plaintiff shipped the first load of materials on August 20, 1962, and, although the account became delinquent by its terms twenty days thereafter, continued to make further shipments to Mr. Morris over a period of more than seven months without ever inquiring as to the status of the loan fund, or requesting payment from it, until it had been exhausted by the intervening requisitions drawn against it. It will not offend the precepts of experience to observe that accounts are rarely collected by neglect, and whoever regulates his business by a contrary rule owes its success less to prudence than to fortune. The homily has a further application in this case. When the dissipation of the loan fund was at length discovered by plaintiff, it approached Mr. Morris with the problem, apparently unmindful of, or indifferent to, the interest it now insists Mrs. Morris had in the business. Mr. Morris redeemed his first promise with a second. He proposed to pay the account out of the end loan. Plaintiff accepted that proposal. At no time, however, did it inform the end lender of its account or take any precaution of any kind to insure payment from that source. Thus opportunity's second knock went unanswered and the predictable result ensued. The loan was made and the money disappeared. Nobody knows where.

In due course the house was erected. Mrs. Morris did not take "any part in the

construction"; was never present at the building site so far as the record discloses. While construction was in progress Mr. Morris arranged to sell the property to the defendants, Mr. and Mrs. Love, and when it was completed Mrs. Morris joined him in a warranty deed conveying the premises to them. The Loves were not informed of plaintiff's outstanding account and did not learn of it until the present action was filed some six months later. In part payment of the purchase price the Loves traded in a lot of their own, conveying it to Mr. and Mrs. Morris as tenants by the entirety. Mr. Morris promptly subjected that lot to a $5,000 loan and his wife signed the note and deed of trust with him. The proceeds were paid by the lender "to Mr. Morris".

Those are all the circumstances bearing on the issue. Plaintiff says they establish the alleged agency "as a matter of law". Some very unusual reasoning has surely been resorted to in reaching that conclusion. The facts, by any regular analysis, are inconsistent with it.

■ Item: The lot was acquired without cost to Mrs. Morris. She was not consulted in its acquisition or in its improvement. She had no stake in her husband's venture and took no part in it beyond assenting to his method of financing it, in the manner normally to be expected of a wife who has no independent interest to protect. No inference beneficial to plaintiff arises from that circumstance. In matters of this kind the husband giveth and the husband taketh away; and the prudent wife, confronted with the alternatives of frustrating her husband's enterprise by withholding her co-operation, or of preserving domestic tranquillity by giving it, will not ordinarily hesitate over the choice. For that reason, as we said in Badger Lumber & Coal Co. v. Pugsley, 227 Mo. App. 1203, 61 S.W.2d 425, 429, "We may infer her act as arising from wifely duty or as an act to help her husband in the accomplishment of a purpose not coupled with

her own." But aside from that, and perhaps even more directly to the point, all her dealings in the mentioned particular were had with others, not with plaintiff, and were unknown to plaintiff until long after its contract with Mr. Morris had been consummated. Agency by estoppel, or by claim of apparent authority, can only be predicated on facts known or appearances shown at the time of the transaction, for they cannot otherwise be said to have *induced* it; knowledge subsequently acquired is irrelevant. 2 C.J.S. Agency § 23g, p. 1050-1, § 96(e) 3, p. 1218.

■ Item: In no instance did Mr. Morris profess to be his wife's agent, or purport to be acting for anyone *other than himself* as sole "contractor", "buyer", and "builder". Thus even if Mrs. Morris had had full knowledge of her husband's dealings instead of none, no detail of the transaction could have put her on notice that he was representing himself as her agent or so conducting himself as to convey that impression, or could have suggested to her any necessity for breaking silence on the subject. In order for one to sanction another as his agent by holding him out as such, two essentials must concur: the purported agent must conduct himself in a manner consistent with some pretense of authority, and knowledge of his conduct in that particular, or some reasonable basis for the suspicion of it, must be brought home to the alleged principal. Silence of the alleged principal is not a factor for consideration unless "he knowingly allows another to assume to act for him." 2 C.J.S. Agency § 23f, p. 1050.

■ Item: In no instance did plaintiff treat Mrs. Morris as a party in interest. At no time did it make any effort to verify its conclusion that Mr. Morris was acting as her agent in the transaction. "An agency will not be inferred because a third person assumed that it existed." 2 C.J.S. Agency § 23a, p. 1046. At no time did it have any communication with her in regard to the transaction or even carry her name on

its books as having an interest in it. In no respect whatever did it display that degree of common sense which distinguishes good faith from blind faith, and which is so indispensible both to the verity and the validity of any claim of reliance on apparent authority. Seibel v. Harry S. Surkamp Investment Co., Mo.App., 328 S.W.2d 179, 184. Indeed, if the thrust of the loss in this case is to be directed by estoppel, plaintiff's own conduct throughout the affair makes it the most obvious and inviting target.

 Nor is the case any better when viewed from the standpoint of ratification. The only thing put forward as an act of ratification on Mrs. Morris's part is her alleged reception of benefits. But there is no evidence that she received a benefit, or, if she did, that she received it under circumstances inconsistent with her disclaimer of liability. None of the sale or loan proceeds were traced to her. True, it may be argued that the improvement of the lot was itself a benefit, but in Badger Lumber & Coal Co. v. Pugsley, supra, we reached a contrary result, though without discussion of this point. We there said, however, that "the husband has absolute right in his own behalf" to improve property held by the entirety, and the wife is powerless to prevent him. What she is powerless to prevent, and must perforce accept, can surely never be regarded as a benefit of such character as to compel the inference of her ratification and thus bind her for its cost; otherwise, in every case in which the husband exercised his right "in his own behalf", the joint estate, through the inference of benefit to the wife, would become liable for his individual debt.

No agency, actual or ostensible, is to be found in the facts of this case. It is unnecessary to review the authorities cited by plaintiff in support of its contrary conclusion; all are distinguishable on such points as, for instance, that the wife "dealt actively with the person furnishing the material", or that she was on the building site "prac-

tically every day" giving "instructions as to building the house", or that the house was built with her consent on land owned by herself; etc., etc.

The case was well tried and correctly ruled. The judgement is affirmed.

All concur.