James B. EYBERG and Sheila Eyberg,
and Roger Cape and Virginia Cape,
Plaintiffs–Appellants,

v.

Himat SHAH and Bhabana
Shah, Defendants,

and

Jefferson Savings & Loan Association,
Intervenor–Respondent.

No. 15913.

Missouri Court of Appeals,
Southern District,
Division Two.

July 5, 1989.

John T. Bruere, St. Charles, for defendants Himat & Bhabana Shah.

John Z. Williams, Williams, Robinson, Turley, Crump & White, Rolla, for Jefferson Sav. & Loan.

FLANIGAN, Presiding Judge.

This action, involving multiple claims and multiple parties, arises from the sale of approximately 47 acres of real estate ("the land") in Pulaski County. The sellers were James B. Eyberg and Sheila Eyberg, his wife, and Roger Cape and Virginia Cape, his wife, plaintiffs below. The buyers were Himat Shah and Bhabana Shah, his wife, defendants below. The deed was delivered by sellers to buyers on September 4, 1986. The sale price was $900,000.

In connection with the sale, the buyers borrowed $600,000 from Jefferson Savings & Loan Association ("Jefferson") and gave Jefferson a note secured by a deed of trust on the land. The buyers later defaulted in the payment of the note and the trustee, at the request of Jefferson, foreclosed under the deed of trust. The foreclosure culminated in a sale on July 30, 1987, at which time Jefferson, as the successful bidder, received a trustee's deed to the land for a bid price of $400,000.

On March 6, 1987, plaintiffs brought this action against defendant Shah and his wife. The petition sought a decree annulling the deed of September 4, 1986, or, alternatively, awarding actual and punitive damages based on certain alleged fraudulent representations and other misconduct on the part of Shah.

On May 7, 1987, Jefferson filed a motion to intervene and the trial court sustained the motion. Jefferson filed a "Petition for Declaratory Judgment" seeking a declaration that the deed of trust and the trustee's deed to Jefferson were valid.

Plaintiffs-sellers filed an answer to Jefferson's petition. The answer did not contain a counterclaim. The answer did plead that defendant Himat Shah (hereinafter "Shah"), at all times mentioned in plain-

James A. Broshot, Mazzei and Broshot, Steelville, for plaintiffs-appellants.

tiffs' petition and in Jefferson's intervening petition, was acting as agent for Jefferson and that Jefferson had ratified all the actions and statements of defendant Shah. The answer also pleaded that Shah had fraudulently induced the delivery of the deed from plaintiffs to Shah by making certain false representations. The answer further alleged that as part of the purchase price of the land plaintiffs were to receive a promissory note in the amount of $150,000 and second deed of trust executed by defendants-buyers in favor of plaintiffs, and that said note and second deed of trust were to be prepared by Jefferson but that Jefferson failed to do so.

A separate nonjury trial was held on Jefferson's petition for declaratory judgment and the answer thereto filed by plaintiffs. Apparently Shah and his wife did not file an answer to Jefferson's petition. Jefferson and plaintiffs appeared and offered evidence at that hearing. Shah did not appear. On May 24, 1988, the trial court made findings of fact and conclusions of law and entered a judgment finding the issues in favor of Jefferson on its intervening petition. On August 22, 1988, the trial court, pursuant to Rule 74.01(b),[1] entered an amended judgment. Plaintiffs timely appealed from the amended judgment.

Plaintiffs challenge the amended judgment on its merits and on procedural grounds. Plaintiffs' challenge to the merits will be considered first.

Plaintiffs' first point is that the trial court erred in granting Jefferson declaratory relief by upholding the validity of Jefferson's deed of trust and the trustee's deed because "[the trial court's] finding that Shah was not the agent of Jefferson is not supported by competent and substantial evidence." This contention requires a review of the evidence in light of certain familiar principles of the law of agency.

 The existence and scope of an agency need not be established by direct and positive evidence but may be inferred from facts and circumstances in evidence. *State v. Bland*, 355 Mo. 17, 194 S.W.2d 42, 46 (1946); *Jefferson–Gravois Bank v. Cunningham*, 674 S.W.2d 561, 563 (Mo.App. 1984). Plaintiffs, as the parties who pleaded in their answer to Jefferson's intervening petition that an agency existed between Shah and Jefferson, had the burden of proof on that issue. *Henry v. Cervantes– Diversified & Associates*, 700 S.W.2d 89, 92 (Mo.App.1985); *Springfield Television, Inc. v. Gary*, 628 S.W.2d 398, 402 (Mo.App. 1982); *Molasky Enterprises, Inc. v. Carps, Inc.*, 615 S.W.2d 83, 89 (Mo.App.1981); *Dierks & Sons Lumber Company v. Morris*, 404 S.W.2d 229, 232 (Mo.App.1966). If there is conflicting evidence on the existence of an agency, the issue is one of fact for the trial court. *Molasky Enterprises, Inc. v. Carps, Inc.*, supra, at 89. An agency will not be inferred merely because a third person assumed it existed. *Shelby v. Slepekis*, 687 S.W.2d 231, 235 (Mo.App. 1985); *Stenger v. Great Southern Sav. & Loan Ass'n*, 677 S.W.2d 376, 385 (Mo.App. 1984); *Springfield Television, Inc. v. Gary*, supra, at 402; *Dierks & Sons Lumber Co. v. Morris*, supra, at 232.

 An apparent agency may be created where the conduct of the principal is such that an appearance of agency is created. When the principal's acts or conduct lead the public to believe that the agent possesses authority to act in the name of the principal, the principal is bound by the acts within the scope of the agent's apparent authority as to persons who have reasonable grounds to believe that the agent has such authority and in good faith deal with the agent. *Shelby v. Slepekis*, supra, at 235. To find apparent agency the appearance of authority must have been created by the principal. *Shelby v. Slepekis*, supra, at 235; *Jefferson–Gravois Bank v. Cunningham*, supra, at 563; *Springfield Television, Inc. v. Gary*, supra, at 402–403;

---

**1.** Except where otherwise indicated, all references to rules are to Missouri Rules of Court, V.A.M.R.

*Motor Transp. v. Orval Davis Tire Co., Inc.,* 585 S.W.2d 195, 202 (Mo.App.1979); *Dierks & Sons Lumber Co. v. Morris,* supra, at 232.

Once shown, apparent authority is equivalent to express authority. *Cameron Mut. Ins. Co. of Missouri v. Bouse,* 635 S.W.2d 488, 491 (Mo.App.1982). An agency by estoppel or an apparent agency must be based on facts existing at the time of the transaction and not upon facts arising later. *Dierks & Sons Lumber Co. v. Morris,* supra, at 232. The person dealing with a supposed agent has a duty to ascertain for himself the fact and scope of agency. *Springfield Television, Inc. v. Gary,* supra, at 403.

Although *testimony* of an agent is competent to establish his agency, *Wickes Lumber Co. v. Richmond Const.,* 690 S.W.2d 488, 490 (Mo.App.1985); *Cameron Mut. Ins. Co. of Missouri v. Bouse,* supra, at 491; *Motor Transp. v. Orval Davis Tire Co., Inc.,* supra, at 202, an *extrajudicial* statement by the alleged agent cannot establish the fact or scope of agency. *J.R. Watkins Co. v. Lankford,* 363 Mo. 1046, 256 S.W.2d 788, 792[4] (1953); *State v. Bland,* 355 Mo. 17, 194 S.W.2d 42, 45[2] (1946); *Springfield Television, Inc. v. Gary,* supra, at 402; *Motor Transp. v. Orval Davis Tire Co., Inc.,* supra, at 202.

On July 22, 1986, plaintiffs, as sellers, entered into a written contract with Shah and his wife, as buyers, for the sale of the land for $900,000. According to plaintiffs' petition, the purchase price was to be paid in the following manner: (a) approximately $500,000 was to discharge the liens of two outstanding deeds of trust; (b) approximately $250,000 was to be paid in cash on day of closing; (c) the balance of $150,000 was to be evidenced by a note and second deed of trust executed in favor of plaintiffs by Shah and his wife.

In obtaining a $600,000 loan from Jefferson, Shah and his wife signed a written application for the loan. The document recited: "This is not a loan commitment and is subject to board approval." According to dates appearing on the document, the document was approved by Jefferson's board on August 27, 1986, and was signed by Shah and his wife on August 29, 1986. The loan committee report was dated September 2, 1986.

On September 4, 1986, Jefferson issued its check, payable to Pulaski County Abstract & Title Company (hereinafter "Pulaski"), representing the net proceeds of its loan to Shah and his wife. The check was in the amount of $589,760.25, which was the balance of the loan of $600,000 after deductions had been made for an "origination fee," a credit report fee, title insurance premium, and the fee for recording Jefferson's deed of trust.

The closing was held on September 4, 1986, at Pulaski's office in Waynesville. William Morgan, who is an attorney and also Pulaski's manager, "handled" the closing. Present at the closing were plaintiffs James Eyberg and Roger Cape, defendant Shah, and Morgan.

Morgan testified that a "day or two" before the closing Clyde Meyer, an officer of Jefferson, telephoned Morgan and informed him that Jefferson was making the $600,000 loan and would send a check for the net proceeds of the loan for Morgan to disburse on September 4. Prior to the closing, the wives of Eyberg and Cape had signed the deed.

Shah brought to the closing the following items: (a) Jefferson's check in the amount of $589,760.25 payable to Pulaski; (b) the deed of trust which had been signed by Shah and his wife; (c) a document dated September 4, 1986, entitled "Recording Instructions," from Jefferson to Pulaski. It instructed Pulaski to record the deed of trust and to send Jefferson a settlement statement describing the closing.

The note which Shah and his wife had executed in favor of Jefferson in connection with the loan had been retained by Jefferson and was not produced at the closing. Morgan testified that his settlement

statement reflected that $150,000 of the purchase price was to be represented by a note in that amount executed by Shah and his wife in favor of plaintiffs. Morgan testified that he asked the other persons at the closing if they wanted him to prepare the note and [a second] deed of trust and "Eyberg or Shah or Cape said no, they did not wish for us to do anything, they would take care of it separately." Morgan carried out the instructions contained in Jefferson's memorandum to Pulaski. That memorandum made no mention of the arrangement between plaintiffs and Shah with regard to the $300,000 by which the price of the land exceeded the loan. Morgan disbursed the proceeds of the loan by issuing checks in payment of the two outstanding prior mortgages, a check to Pulaski for closing services, and the balance of $89,707.91 to the plaintiffs.

Morgan testified, with respect to the closing, that he did not remember anyone saying that Jefferson was supposed to prepare the second deed of trust in favor of plaintiffs.

Jefferson's trial witnesses were Morgan and John Bowman. Bowman was Jefferson's executive vice president. Bowman testified, without objection, that the only relationship between Jefferson and Shah was that of lender and borrower. He said that Jefferson had never entered into any kind of joint venture, partnership agreement, agency relationship, "or anything of that nature" with the Shahs. "There is no record of that with Jefferson." He also testified that there was nothing in the records of Jefferson to show that Jefferson was to prepare a note and second deed of trust in favor of plaintiffs for execution by the Shahs and that Jefferson was not requested to do so and did not do so. He admitted that Shah had been given the deed of trust and the $589,760.25 check to take to the closing, but stated that that was the customary way Jefferson did business "in the St. Louis County area."

Bowman also testified that Clyde Meyer, an employee of Jefferson, "processed this loan." He said that Jefferson's board met once a month and that it is not unusual for a loan to be approved "soon after it's applied for." He also stated that Shah had four prior loans with Jefferson, one of which had been paid off and the other three were "current" at the time the instant loan was made.

Plaintiffs' evidence consisted of the testimony of plaintiff Cape, plaintiff Eyberg and John Bowman as a recalled witness. Bowman identified a financial statement of Shah which was attached to Shah's loan application. That statement was dated August 6, 1986, and showed Shah having a net worth of $833,350.

Cape testified that at the closing, when the matter of the $250,000 cash payment came up, Shah "held up a check." Morgan said, "I will not accept a personal check in my escrow account." At that time, according to Cape, "Shah said, 'Can't we take care of this later, fellows,' and we agreed." Cape also testified that when the subject of the second deed of trust was mentioned Eyberg said to Morgan, "We are trying to save a little money. Jefferson said they will do it for us so we are going to save $60. Eyberg and Shah agreed with that. Shah said he did not have the second deed of trust in his possession but it would be delivered on his next visit."

Cape also testified that on August 28, a week preceding the closing, Shah told Cape that he was obtaining his loan from Jefferson. According to Cape, "Mr. Shah assured us that he would have no problem getting the loan from his good friend, Drew Kuenneke [an officer of Jefferson], and the Jefferson Savings & Loan Bank because they were joint venturers together on several other properties—namely, Lake St. Louis and he indicated a motel property at Montgomery City."

Cape also said at some unnamed date after the closing he had a conversation with John Bowman in which Bowman said that if he had been the approving loan officer he would not have approved the instant loan.

On cross-examination Cape testified that he was a licensed real estate salesman and had been active in real estate business. He said that the land had been appraised in May 1986 at $1,300,000 by a professional appraiser and that Shah had used that appraisal in connection with obtaining the loan from Jefferson.

Plaintiff Eyberg testified that in October 1986 and in following months he talked with "Clyde Meyer at Jefferson." Eyberg said he asked Meyer about "the second deed of trust that he had been told was to be prepared by Jefferson." Meyer told Eyberg that he did not know anything about "any second deed of trust."

Appellate review of this court-tried case is governed by Rule 73.01(c), V.A.M.R. This court must give due regard to the opportunity of the trial court to have judged the credibility of the witnesses. The judgment of the trial court will be sustained unless there is no substantial evidence to support it, or it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 . S.W.2d 30, 32[1] (Mo. banc 1976).

■ The invalidity of plaintiffs' first point, as it is framed, is demonstrated by the fact that John Bowman testified, without objection, that the only relationship between Jefferson and Shah was that of lender and borrower and that there was no agency relationship between them. Plaintiffs' first point also overlooks the fact that the burden of proof on the issue of agency was upon plaintiffs and not upon Jefferson. Ordinarily a trial court's mere disbelief of the evidence adduced by the party having the burden of proof on an issue is sufficient to support an adverse finding on that issue even though the other party has offered no evidence.

The argument portion of plaintiffs' brief, however, asserts that the trial court's finding on the agency issue was against the weight of the evidence. Although that assertion has not been preserved for appel-

late review, this court has concluded to consider it gratuitously. It, too, has no merit.

Plaintiffs argue that the following factors demonstrate that Shah was Jefferson's agent: (1) Shah applied for a loan that was approved two days "before he asked for it"; (2) Shah "had a major real estate loan approved in three working days over a holiday weekend, based solely upon his application, his financial statement, and one appraisal submitted by him"; (3) Shah "brought [Jefferson's] check and instructions personally to the closing, a practice that even Jefferson's own witness [Morgan] said he had never seen done"; (4) Shah told plaintiff Cape "that he would have no problem getting the money from his good friend Drew Kuenneke and [Jefferson] because they were joint venturers"; (5) Shah told plaintiff Cape that Jefferson would prepare the note and second deed of trust to be placed on the land in favor of plaintiffs; (6) Cape testified that John Bowman told him that he would not have approved the loan to Shah and that the loan was made outside of Jefferson's lending area.

■ The power of an appellate court to set aside a judgment on the ground that it is against the weight of the evidence should be exercised "with caution and with a firm belief that the ... judgment is wrong." *Murphy v. Carron*, supra, at 32. For the reasons which follow, this court has no such firm belief.

Factors (1) and (2) merely demonstrate that Shah's application for a loan was processed with expedition. On previous occasions Shah had obtained loans from Jefferson. Though neither the trial court nor this court was called upon to decide the prudence of the loan from Jefferson's standpoint, the financial statement and the appraisal seemed to support Jefferson's initial decision to make the instant loan. Factors (1) and (2) do not, singly or in combination, compel a finding of agency.

In advancing factor (3) plaintiffs say that it was unusual for the borrower to bring to

the closing the check of the lending institution. The check itself was payable to Pulaski and not to Shah. Shah's prior dealings with Jefferson had been satisfactory, and the fact is that Shah did deliver the check as he was supposed to do. Merely trusting a man does not make him your agent.

In arguing factor (4) and factor (5) plaintiffs overlook the principle that an extrajudicial statement by the alleged agent cannot establish the fact or scope of agency. The trial court was at liberty to disbelieve that factors (4) and (5) existed.

In advancing factor (6) plaintiffs overlook the principle that an apparent agency must be based on facts existing at the time of the transaction and not upon facts arising later. Moreover, the trial court was at liberty to disbelieve Cape's testimony and much of it was in conflict with the testimony of John Bowman.

This court holds that the finding of the trial court "that [Shah] was not acting as an agent for [Jefferson] in any of his activities, actions, and statements made to or with respect to plaintiffs" is not against the *weight* of the evidence and indeed is fully supported by the evidence. Plaintiffs' first point has no merit.

Plaintiffs' second point is that the trial court erred in designating its judgment final for purposes of appeal under Rule 74.-01(b) "as there was no evidence to support a determination that there was no reason for delay and plaintiffs have been prejudiced thereby as they have been forced to file an appeal of the trial court's ruling while the case is still pending before the trial court on all of the other issues in the case."

On February 11, 1988, plaintiffs filed their answer to Jefferson's intervening petition. On April 18, 1988, four days before the April 22 trial on Jefferson's intervening petition and plaintiffs' answer thereto, plaintiffs filed a motion to file a "Cross-petition for Damages" against Jefferson. At the conclusion of the trial the court sustained plaintiffs' April 18 motion. On April

26 plaintiffs filed their "Cross-petition for Damages" against Jefferson. On May 2 Jefferson filed an answer to plaintiffs' cross-petition. On May 24 the trial court entered the original judgment. On August 22 the trial court, on the motion of Jefferson and pursuant to Rule 74.01(b), entered an amended judgment, containing an express determination that "there is no just reason for delay" and designating its judgment final for appeal. Plaintiffs' appeal ensued.

Rule 74.01(b) reads:

"When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may enter a judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay. In the absence of such determination, any order or other form of decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties."

Rule 74.01(b) vests discretion in the trial court and permits appeals to proceed in due course upon an express determination that there is no just reason for delay. *Landoll v. Dovell*, 752 S.W.2d 323, 326 (Mo. banc 1988). As pointed out in *In re Estate of Caldwell*, 766 S.W.2d 464, 466 (Mo.App.1989), Rule 54(b) of the Federal Rules of Civil Procedure is the source and "virtual equivalent" of Rule 74.01(b) and "federal decisions construing Rule 54(b) are persuasive in applying Rule 74.01(b)."

Plaintiffs' second point makes the assumption, unsupported by citation of authority, that the "express determination" mentioned in Rule 74.01(b) requires *independent evidentiary* support. The re-

search of this court has disclosed no case so holding.

In discussing Federal Rule 54(b) it has been said: "[S]ome showing must be made by the party desiring an immediate appeal in order to overcome the normal rule that no appeal be heard until the entire case has been completed." Wright, Miller & Kane, Fed. Prac. & Proc.: Civil 2d § 2659. However, the same text also states: "There is no procedure for obtaining a certificate prescribed in Rule 54(b). In most cases a party simply will file a motion requesting the court to make the determination and direction required by the rule. In an appropriate case, the district court may consider the question sua sponte." Id. § 2660. The fact that some federal courts have made a Federal Rule 54(b) determination sua sponte clearly seems inconsistent with plaintiffs' assumption that independent evidentiary support is required.

The leading case construing Federal Rule 54(b) is *Curtiss–Wright Corp. v. General Electric Co.*, 446 U.S. 1, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980). The following statements and propositions in *Curtiss–Wright* appear equally applicable to Rule 74.01(b).

■ The trial court must first determine that it is dealing with a "final judgment." It must be a "judgment" in the sense that it is a decision upon a cognizable claim for relief, and it must be "final" in the sense that it is an ultimate disposition of an individual claim entered in the course of a multiple claims action. *Curtiss–Wright*, 100 S.Ct. at 1464[1]. Once having found finality, the trial court must determine whether there is any just reason for delay. Not all final judgments on individual claims should be immediately appealable, even if they are in some sense separable from the remaining unresolved claims. The function of the trial court is to act as a "dispatcher." It is left to the sound judicial discretion of the trial court to determine the appropriate time when each final decision in a multiple claims action is ready for appeal. This discretion is to be exercised in the interest of sound judicial administration. Id. at pp. 1464–1465.

■ In deciding whether there is no just reason to delay the appeal of an individual final judgment, the trial court must take into account judicial administrative interests as well as the equities involved. Consideration of the former is necessary to assure that the application of the Rule effectively "preserves the historic federal policy against piecemeal appeals." The trial court may properly consider such factors as whether the claim under review is separable from the others remaining to be adjudicated and whether the nature of the claim already adjudicated is such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals. Presence of one of these factors would not necessarily mean that Rule 54(b) certification would be improper, but it would require the trial court to find a sufficiently important reason for granting certification. Id. at 1465.

■ The mere presence of a counterclaim does not render a Rule 54(b) certification inappropriate. If it did, Rule 54(b) would lose much of its utility. A counterclaim, whether compulsory or permissive, presents no special problems for a Rule 54 determination. A counterclaim is not to be evaluated differently from other claims. Like other claims, the significance of a counterclaim for Rule 54 purposes turns on its interrelationship with the claim on which certification is sought. Id. at 1465.

The decision to certify is with good reason left to the sound judicial discretion of the trial court. With equally good reason, any abuse of that discretion remains reviewable by the appellate court. The standard against which the trial court's exercise of discretion is to be judged is the "interest of sound judicial administration." Admittedly this presents issues not always easily resolved, but the proper role of the appellate court is not to reweigh the equities or reassess the facts but to make sure that the conclusions derived from those weighings and assessments are juridically sound and supported by the record. Id. at 1466.

There are two aspects to the function of the appellate court in Rule 54(b) cases. The appellate court must scrutinize the trial court's evaluation of such factors as the interrelationship of the claims so as to prevent piecemeal appeals in cases which should be reviewed only as single units. But once such juridical concerns have been met, the discretionary judgment of the trial court should be given substantial deference, for the trial court is the one most likely to be familiar with the case and with any justifiable reasons for delay. The appellate court should disturb the trial court's assessment of the equities only if it can say that the judge's conclusion was clearly unreasonable. Id. at 1466.

Plainly, sound judicial administration does not require that Rule 54(b) requests be granted routinely. That is implicit in commending them to the sound discretion of the trial court. Because this discretion is with good reason vested by the rule primarily in the trial court, and because the number of possible situations is large, the appellate court should be reluctant either to fix or sanction narrow guidelines for the trial court to follow. Id. at 1466.

For the reasons which follow, this court holds that on the instant record the trial court did not abuse its discretion in making the "express determination" under Rule 74.01(b) and thereby permitting the instant appeal.

The trial court in its judgment of August 22 stated that unless it made the express determination under Rule 74.01(b), "there will be a cloud upon the title to [the land]." This case had been pending for over a year before the separate trial was held. Jefferson's intervening petition had been on file for almost nine months. Plaintiffs' answer to Jefferson's petition had been on file more than two months. It did not include a counterclaim. The "cross-petition" filed by plaintiffs after the trial was in three counts. Count III was pleaded as an alternative to Counts I and II. All three counts sought money damages from Jefferson. Counts I and II pleaded an agency relationship between Jefferson and Shah. Count III did not plead such agency.

The record does not reflect at whose instance the separate trial was held. The record does not eliminate the possibility that the separate trial was held at plaintiffs' request. There is nothing in the transcript of the trial which shows any objection by plaintiffs to its taking place. There is nothing in the record or in plaintiffs' brief as appellants here to show that plaintiffs have any evidence, other than that which they offered at the trial, on the issue of the Shah–Jefferson agency. There is nothing in the record to show that the matters contained in plaintiffs' "Cross-petition" against Jefferson could not have been asserted earlier as a counterclaim and tried at the April 22 trial. This court is not unaware of the possible effect of the instant affirmance upon some of the unadjudicated claims, and if this court had been in the position of the trial judge it might have ruled otherwise on Jefferson's motion for a Rule 74.01(b) disposition.

Plaintiffs' brief argues only that there was no independent evidentiary support for the Rule 74.01(b) disposition and that plaintiffs "have been forced to file an appeal from an order by the trial court in a case that is still packed with issues and parties." If the latter argument were valid, Rule 74.01(b) would be devitalized. Based on its examination of the entire record on appeal in light of the briefs of the respective parties, this court holds that the trial court did not abuse its discretion in applying Rule 74.01(b).

Plaintiffs' third point is that the trial court erred in declaring in its judgment that "neither plaintiffs nor defendant Shah have any interest, right, or claim, legal or equitable, to [the land]" because this portion of the judgment was "beyond the scope of the relief asked for in the prayer to" Jefferson's intervening petition.

Although the prayer in Jefferson's intervening petition is somewhat inartfully

worded, it is probably sufficient to constitute a request for the relief granted. In any event, the prayer of plaintiffs' answer to the intervening petition asked the court to "declare the validity of the [first] deed of trust and trustee's deed according to the law and facts of this case." "The general rule is that a party cannot complain on appeal of procedure which was adopted in the trial court at his own request, nor may he complain of alleged error in which, by his own conduct at trial, he joined or acquiesced." *Hilton v. Crouch*, 627 S.W.2d 99, 102[2] (Mo.App.1982). (Citing authorities.) Plaintiffs' third point has no merit.

The judgment is affirmed.

MAUS and PREWITT, JJ., concur.