E. C. ROBINSON LUMBER COMPANY, a corporation, Plaintiff,

v.

Gene LOWREY, Margaret Lowrey, Mercantile Mortgage Company, a corporation, and Roger A. Bailey, Trustee, Defendants.

No. 7245.

Springfield Court of Appeals.

Missouri.

March 11, 1955.

Bailey & Craig, Sikeston, for defendant-appellant, Mercantile Mortgage Co.

Edward F. Sharp, New Madrid, for plaintiff-respondent.

STONE, Judge.

In this action, E. C. Robinson Lumber Company (hereinafter called plaintiff) was awarded a personal judgment in the sum of $896.52 against Gene Lowrey and Margaret Lowrey, his wife, for materials used in construction of a house in New Madrid, Missouri, upon a lot owned by the Lowreys, as tenants by the entirety, and the real estate was subjected to a materialman's lien adjudged to be prior and superior to the lien of a deed of trust re-

corded on April 6, 1949, which secured payment of a note held by defendant, Mercantile Mortgage Company (hereinafter called Mercantile). The Lowreys defaulted in the circuit court, and this appeal is by Mercantile alone. The case having been tried by the court, sitting as a jury, it is our duty to review it "upon both the law and the evidence as in suits of an equitable nature." Section 510.310(4); Scott v. Kempland, Mo., 264 S.W.2d 349, 355(10); Howell v. Reynolds, Mo., 249 S.W.2d 381, 387 (13). (All statutory references herein are to RSMo 1949, V.A.M.S.) "The judgment shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of 'the witnesses." Section 510.310(4); Cosentino v. Heffelfinger, 360 Mo. 535, 229 S.W.2d 546, 549(1); Truck Leasing Corp. v. Esquire Laundry & Dry Cleaning Co., Mo.App., 252 S.W.2d 108, 109(1).

It was stipulated that the materials delivered by plaintiff between February 18, 1948, and April 4, 1949, were used in construction of a house upon the Lowrey lot; "that the agreed amount of plaintiff's account * * * is * * * $896.52 with legal interest from April 4, 1949"; and that the lien (Section 429.080) and this suit (Section 429.170) were timely filed. Mercantile insists that the judgment was erroneous, insofar as it subjected the real estate to a materialman's lien, (1) because it was not shown that "the act that subjected the land to the lien was the joint act of tenants by (the) entirety" and (2) because (as Mercantile alleged in its answer), plaintiff having on March 5, 1949, "accepted" a note "as full and final payment of its (plaintiff's) account" against the Lowreys, and having "stood idly by and permitted" the Lowreys "to furnish verified proof that there were no outstanding liens against the real estate," "plaintiff will not at this late date be heard to say that the verified proof of absence of liens furnished by defendants * * * Lowrey was false * * * at the expense of Mercantile." Stated in another way, the issues raised by Mercantile are (1) as to the authority of

Gene Lowrey, the husband, to act for his wife, and (2) whether plaintiff was estopped by silence.

The case was tried twice in the circuit court. Following the first trial on December 29, 1950, Mercantile's motion for new trial was sustained on the ground, among others, that its motion for a directed verdict should have been granted. When the case was tried again, plaintiff introduced all of the testimony at the first trial and also offered additional evidence. Neither of the Lowreys testified, and defendants presented no evidence at either trial. Mercantile emphasizes that, when Hubert Harris, manager of plaintiff's "branch yard" in New Madrid, was asked at the *first* trial "with whom you made the contract for the purchase of this material and for the delivery," he answered, "I talked to Mr. Gene Lowrey"; and that, in response to the next question, "Is he the man that purchased the material from you?", Harris said, "Yes, sir." Without detailing Harris' testimony, we may say that we are definitely of the opinion that the evidence offered by plaintiff, before it rested at the *first* trial, was wholly insufficient to make a prima facie case of authority on the part of Gene, the husband, to act for his wife in contracting orally with plaintiff, and that Mercantile's motion for a directed verdict at the close of plaintiff's case should have been sustained. However, *after* such motion had been offered and refused, *plaintiff's* counsel *recalled* Harris at the first trial and *then* elicited testimony from him to the effect that Margaret, the wife, "knew the work was being done"; that she had given *"at least a third"* of the orders for material "by telephone calls and in person"; and, that she and her husband had been to plaintiff's yard "a number of times together and (had) ordered material together." (All emphasis herein is ours.)

When the case was retried on October 27, 1952, witness Harris again testified. Being invited on that occasion to "tell the court in your own language just how this material was sold and delivered to the Lowreys and * * * what part each of them had in the purchase of the material,"

Harris *then* said *"they were up there at the lumber yard and we talked over the material and agreed on the price and we delivered the material as. they called for it * * *. Two-thirds* of the time *she * * * * called the orders in and they were delivered and *she * * * was in a number of times and *he and her* picked out the cabinet and *she* picked out the paint· and a number of tickets *she* signed on delivery of the material." And, when asked "whether or not *both of them* (the Lowreys) participated in the purchase of this material," Harris replied *"they did."* He also testified without objection that, in talking to the Lowreys *after the first trial,* "she agreed * * * that *they* had purchased material, but the only thing she objected to was *they* bought a little more material than *they* had planned to buy, and agreed to me that *they* owed us for the material." According to Harris, he had seen *Mrs. Lowrey* "around the house" during the course of construction "practically every day."

It was stipulated at the *second* trial that "Dean Fitzgerald was the carpenter employed to build the (Lowrey) house and that if * * * present (he) would testify that Mrs. Margaret Lowrey was there practically every day during the time the house was being constructed, * * * that she gave him instructions as to building the house as the work progressed, * * * that when the material for the house was delivered by the Robinson Lumber Company she signed a great number of the receipts * * * showing delivery of the material, (and) that he knows she went down to the lumber shed for the purpose of picking out some of the material." It was agreed also that *both of the Lowreys* "signed and tendered" to plaintiff on March 5, 1949, a deed of trust securing payment of a note for $1,887.38 which apparently was the then unpaid balance of plaintiff's account.

■ Where, as here, real estate is owned by husband and wife as tenants by the entirety, title may be affected only by the joint act of both spouses, and neither may, by his or her individual act, subject the property to a mechanic's or materialman's lien[1]; and, it has been said that, before a lien is imposed on an estate by the entirety, the evidence should be strong and persuasive that the act subjecting the property to a lien was the joint act of both tenants.[2] That the wife knows of and passively acquiesces in construction of a house, [R. D. Kurtz, Inc. v. Field, 223 Mo.App. 270, 14 S.W.2d 9, 11(5); Berkshire v. Holcker, 202 Mo.App. 433, 216 S.W. 556, 558–559(6)], or that she evidences "a wifely interest" therein [Marshall v. Hall, Mo. App., 200 S.W. 770, 775(11)], or that she "compliments" the work and makes no objection thereto [Wilson v. Fower, 236 Mo. App. 532, 155 S.W.2d 502, 504(6)], or even that she makes suggestions concerning construction [Wilson v. Fower, supra, 155 S. W.2d loc. cit. 504; Berkshire v. Holcker, supra, 216 S.W. loc. cit. 559(8)], does not establish the husband's agency for his wife in purchasing material used in construction.

■ However, irrespective of whether (as Mercantile asserts) the note and deed of trust admittedly "tendered" to plaintiff on March 5, 1949, were "accepted * * * as full and final payment" of plaintiff's account (of which we will treat later), the stipulated fact that Mrs. Lowrey executed such deed of trust tends to indicate her knowledge of and participation in the building project and is evidence of such character as has been considered significant and important in other cases.[3] In our opinion,

1. Wilson v. Fower, 236 Mo.App. 532, 155 S.W.2d 502, 504(2); Badger Lumber & Coal Co. v. Pugsley. 227 Mo.App. 1203, 61 S.W.2d 425, 428(9); Dickinson v. Gault, Mo.App., 229 S.W.2d 283, 284(2).

2. Wilson v. Fower, supra, 155 S.W.2d loc. cit. 504(3); Badger Lumber & Coal Co. v. Pugsley, supra, 61 S.W.2d loc. cit. 429.

3. Magidson v. Stern, 235 Mo.App. 1039, 148 S.W.2d 144, 152(6); Bovard v. Owen, Mo.App., 30 S.W.2d 154, 156(4); Boeckeler Lumber Co. v. Wahlbrink, 191 Mo.App. 334, 177 S.W. 741, 742–743 (2); A. A. Nicol Heating & Plumbing Co. v. J. B. Neevel & Sons Const. Co., 187 Mo.App. 584, 174 S.W. 161, 162(1). Contrast R. D. Kurtz, Inc., v. Field, 223 Mo.App. 270, 14 S.W.2d 9, 11–12(6),

the record in its entirety permits and justifies the conclusion that Mrs. Lowrey did far more than demonstrate "a wifely interest" or passive acquiescence, indulge in expressions of approbation or approval, or make occasional suggestions about the work; and, as we view the evidence, Mrs. Lowrey's activity and participation in the construction project was of such nature and extent as to bring the case at bar within the doctrine thus stated in Magidson v. Stern, 235 Mo.App. 1039, 148 S.W.2d 144, 151(5): "(I)f the facts * * * are such as to show that the wife dealt actively with the person furnishing the labor and material, and, as frequently happens, assisted in raising funds for the doing or completion of the work, then her conduct, even if not of a character to have bound her personally to pay for the labor and material going into the work, will at least be·held sufficient to have transmitted to the person furnishing the labor and material the right to have a lien upon the premises."

■ The testimony of witness Harris was, in certain respects, obviously inconsistent, highly unsatisfactory and completely unconvincing. Cf. John T. Brown, Inc., v. Weber Implement & Automobile Co., Mo., 260 S.W.2d 751, 756–757. But, *even if* we might assume that, since Harris' testimony at the *first* trial was offered at the *second* trial by *plaintiff's* counsel, all of his testimony at both trials properly might be treated as having been given at the second trial (a question which we need not and do not determine), the record before us would *not* permit application of the principle that "(w)here a party relies on the testimony of a single witness to prove a given issue, and the testimony of such witness is contradictory and conflicting, * * * with no explanation of the contradiction, and no other fact or circumstance in the case tending to show which version of the evidence is true, no case is made". Adelsberger v. Sheehy, 332 Mo. 954, 59 S.W.2d 644, 647 (6–8). See also Pritt v. Terminal R. Ass'n of St. Louis, 359 Mo. 896, 224 S.W.2d 119, 123(3). For, at the *second* trial, plaintiff did *not* depend entirely upon the oral testimony of witness Harris, and the pre-trial stipulation of counsel and the stipulation during trial as to what carpenter Fitzgerald would have testified, if present, supplied facts and circumstances tending to indicate which of Harris' statements might be accepted as true and furnished substantial evidentiary support for plaintiff's claim. So, upon conflicting evidence, resolution of the factual issues was, in the first instance, for the trial judge sitting as a jury.[4]

■ We have not overlooked the fact that, as Mercantile points out, plaintiff did not plead *ratification* by Mrs. Lowrey or *estoppel* on her part to deny her husband's agency. Although the doctrine has been criticized in principle [Lipscomb v. Talbott, 243 Mo. 1, 147 S.W. 798, 805], has been ignored in practice [Wilson v. St. Joseph & G. I. R. Co., Mo.App., 211 S.W. 897, 898 (3)], and has been denied in dictum [Neal v. Caldwell, 326 Mo. 1146, 34 S.W.2d 104, 112], it appears that the general rule in Missouri is that, where plaintiff relies on ratification as a ground of recovery, it must be pleaded.[5] Likewise, subject to certain exceptions,[6] estoppel must be plead-

where the wife's *subsequent* joinder in a deed of trust was, "*standing alone*," insufficient to show her acquiescence.

4. Sparks v. Auslander, 353 Mo. 177, 182 S.W.2d 167, 172(5); Rothe v. Hull, 352 Mo. 926, 180 S.W.2d 7, 11(7, 8); Goslin v. Kurn, 351 Mo. 395, 173 S.W.2d 79, 86 (12). See and compare also Merrick v. Bridgeways, Inc., 362 Mo. 476, 241 S.W. 2d 1015, 1019–1020(8–10); Hamilton v. Patton Creamery Co., 359 Mo. 526, 222 S.W.2d 713, 716(1–3); Steele v. Kansas City Southern R. Co., 302 Mo. 207, 257 S.W. 756, 758–759(4).

5. Lipscomb v. Talbott, 243 Mo. 1, 147 S.W. 798, 805(1); Slabon v. St. Louis Car Co., Mo.App., 102 S.W.2d 939, 942(3); Iowa Bonding & Casualty Co. v. City of Marceline, Mo.App., 255 S.W. 577, 578(4); Stenson v. Lancaster, 178 Mo.App. 340, 165 S.W. 1158, 1160(5); Paxson v. Pierce, 25 Mo.App. 59, 63.

6. See footnote 3 in Goodwin & McDowell Motor Co. v. St. Clair Auto. Finance Co., Mo.App., 253 S.W.2d 543, 545.

ed to make evidence offered on that theory admissible.[7] However, we think that plaintiff's recovery in the instant case properly rests on Gene's *implied agency* or *implied authority* to act for his wife. "*Implied agency is actual agency* which is to be established by proof of circumstances bearing on the question; that is, by deduction or inference from other material facts in the case." Farm & Home Savings & Loan Ass'n of Missouri v. Stubbs, 231 Mo.App. 87, 98 S.W.2d 320, 333(10); Thimmig v. General Talking Pictures Corporation, Mo. App., 85 S.W.2d 208, 211(1). "*Implied authority is actual authority* of which direct proof is lacking, but which is to be implied or inferred from relevant facts and circumstances in the case." Baker v. Aetna Casualty & Surety Co., Mo.App., 193 S.W. 2d 363, 367(10). And, implied agency or implied authority is nonetheless actual merely because it is to be implied.[8]

Although implied agency, which is an actual agency, is distinguishable from agency by estoppel, which is an apparent or ostensible agency,[9] the two frequently are confused and the courts usually fail to draw any distinction between them, perhaps because the same state of facts often will support a finding of agency on either theory.[10] Since the existence of agency is a fact, provable like other facts [Mechem on Agency (2nd Ed.), Vol. 1, Sec. 261, p. 185], agency need not be established by direct evidence but may be inferred from facts and circumstances [Bommer v. Stedelin, Mo.App., 237 S.W.2d 225, 229 (5); Hawkins v. Laughlin, Mo.App., 236 S.W.2d 375, 380(4)] or proved by circum-

stantial evidence. State ex rel. Smith v. Bland, 353 Mo. 1073, 186 S.W.2d 443, 446 (7); Platte Valley Drainage Dist. of Worth County v. National Surety Co., 221 Mo.App. 898, 295 S.W. 1083, 1088(9). In short, "any competent evidence which has a tendency to prove or disprove agency is admissible for that purpose, regardless of whether it is oral or written or is direct, indirect, or circumstantial." 3 C.J.S., Agency, § 322a, p. 273. And "where, in the absence of direct proof, there are facts and circumstances in evidence from which it may reasonably be inferred that the principal intended his agent to have the authority which the agent undertook to exercise, the question of the agent's implied authority will be one for the (trier of the fact) to determine." Baker v. Aetna Casualty & Surety Co., supra, 193 S.W.2d loc. cit. 368(11).

 Evidence tending to show Gene's implied agency to act for his wife in contracting with plaintiff clearly was admissible under plaintiff's petition which pleaded a contract with both of the Lowreys but contained no specific averment of the husband's agency. The material fact, as pleaded, was that both of the Lowreys contracted with plaintiff—not how they contracted, i. e., in person or by agent. "The question of (an agent's) authority is one of evidence, not of pleading." Slevin v. Reppy, 46 Mo. 606, 607. Since an agent's act is the act of his principal, plaintiff's petition pleaded the fact according to its legal effect [cf. Gordon v. Bleeck Automobile Co., Mo.App., 233 S.W. 265, 266(3); McCoy v. Kansas City, St. J. & C. B. R.

7. McLain v. Mercantile Trust Co., 292 Mo. 114, 237 S.W. 506, 508(2); Goodwin & McDowell Motor Co. v. St. Clair Auto. Finance Co., supra, 253 S.W.2d loc. cit. 545; Berkshire v. Holcker, 202 Mo.App. 433, 216 S.W. 556, 561(11); Marshall v. Hall, Mo.App., 200 S.W. 770, 776 (12).

8. Goodwin & McDowell Motor Co. v. St. Clair Auto. Finance Co., supra, 253 S.W. 2d loc. cit. 545-546(6); Baker v. Aetna Casualty & Surety Co., Mo.App., 193 S. W.2d 363, 367-368; Farm & Home Savings & Loan Ass'n of Missouri v. Stubbs, 231 Mo.App. 87, 98 S.W.2d 320, 333(11);

Thimmig v. General Talking Pictures Corporation, Mo.App., 85 S.W.2d 208, 211; 2 C.J.S., Agency, § 23g, p. 1050; Id., § 99a, p. 1227.

9. Austin-Western Road Machinery Co. v. Commercial State Bank, Mo.App., 255 S.W. 585, 588(8, 9); Bennett v. Potashnick, 214 Mo.App. 507, 257 S.W. 836, 839; 2 C.J.S., Agency, § 23g, p. 1050.

10. Goodwin & McDowell Motor Co. v. St. Clair Auto. Finance Co., supra, 253 S.W. 2d loc. cit. 545; Thimmig v. General Talking Pictures Corporation, supra, 85 S.W. 2d loc. cit. 211; Bennett v. Potashnick, supra, 257 S.W. loc. cit. 839.

Co., 36 Mo.App. 445, 452(1)], as is permissible under the well-settled general rule that, in an action against a principal upon a contract entered into by an agent, the contract may be pleaded as the contract of the principal without averment of agency.[11] From the facts and circumstances thus properly shown under the pleadings, we conclude that, by reason of Gene's implied agency to act for his wife in contracting with plaintiff, Mercantile's primary complaint that a lien should not be imposed on the real estate because it was not demonstrated that "the act that subjected the land to the lien was the joint act of tenants by (the) entirety" must be denied.

■ As pleaded in its answer, Mercantile's other contention that plaintiff is estopped by silence runs along this line, i. e., that the note for $1,887.38 executed by the Lowreys and delivered to Harris, plaintiff's local manager, on March 5, 1949, was "accepted" by plaintiff "as full and final payment of its account" against the Lowreys; that "plaintiff knew full well that defendants * * * Lowrey were obtaining a Federal Housing Administration Loan and * * * were required to furnish verified proof that there were no outstanding liens against the real estate"; and, that plaintiff, without advising Mercantile that the materialman's lien had not been satisfied, "stood idly by and permitted defendants * * * Lowrey to make such verified proof and permitted * * * Mercantile * * * to advance the funds secured by

(its) deed of trust." We need not discuss the legal sufficiency or effect of this pleaded defense, for there was a complete failure of factual proof. It is true that the record shows that, on March 5, 1949, Gene Lowrey "brought" a note for $1,887.38 and deed of trust securing same to witness Harris; that "he (Lowrey) wanted to give it (the note) to me (Harris) until he could get the money to pay it"; that "he thought he would get his money the next week"; and, that Harris took and kept the note and *unrecorded* deed of trust until this suit was instituted on September 24, 1949, when, as the petition recited, plaintiff "now herewith tenders same into court for the benefit of the said defendants executing the same." However, there was no evidence that plaintiff "accepted" the note as "full and final payment of its account"; but, on the contrary, the *uncontradicted* testimony was that Harris, as local manager, neither accepted nor had authority to accept the note in payment of the account owing by the Lowreys.

■ Furthermore, absent an agreement that a note is accepted in payment of a lienable account, the mere taking of a note, *which matures within the time allowed by statute for commencement of an action to perfect the lien* [Section 429.170], neither destroys the lien nor waives the right to enforce it, where the note is tendered in the suit instituted.[12] In the instant case, the note and deed of trust executed by the Lowreys on March 5, 1949,

11. 2 Am.Jur., Agency, Section 438, p. 346; 3 C.J.S., Agency, § 305, p. 238; annotation 89 A.L.R. 895; Burgwald v. Weippert, 49 Mo. 60; Slevin v. Reppy, 46 Mo. 606; Draper v. Fitzgerald, 30 Mo.App. 518, 521–522(1). See and compare also Gayle v. Missouri Car & Foundry Co., 177 Mo. 427, 76 S.W. 987, 993(5); Brown v. General Motors Corporation, Mo.App., 95 S.W.2d 654, 655(2); annotation 4 A.L.R.2d 292, 302. And, observe that, in Magidson v. Stern, supra, where mechanics' lien claimants relied "upon the theory that Ida Stern had constituted her husband her agent to act for her, as well as for himself, in his dealings relative to the property which she owned with him as tenants by the entirety, *which*

*agency was to be implied* from the facts and circumstances bearing upon the question" (148 S.W.2d loc. cit. 151), and where plaintiff's petition simply alleged "that at the special instance and request of Morris Stern and Ida Stern, his wife, the owners of the property, he had furnished labor and material" (148 S.W.2d loc. cit. 147), the judgment imposing a lien was affirmed.

12. Ashdown v. Woods, 31 Mo. 465; McMurray v. Taylor, 30 Mo. 263, 266–267 (3); Cleary v. Siemers-Marshall Electric Co., Mo.App., 296 S.W. 448, 451(6); E. R. Darlington Lumber Co. v. Harris, 107 Mo.App. 148, 80 S.W. 688, 690(6); Western Brass Mfg. Co. v. Boyce, 74 Mo.

are not included in the transcript on appeal and nothing before us indicates the *date of maturity* of that note. "On appeal, the presumption is that the trial court's decision was correct, and the burden is on appellant affirmatively to show error as a condition precedent to reversal." James v. James, Mo., 248 S.W.2d 623, 627(8). There being no showing to the contrary, we must assume that the trial judge acted and ruled correctly with respect to the note dated March 5, 1949.[13]

▆ Similarly, we are in no position to consider the "verified proof that there were no outstanding liens against the real estate," to which Mercantile referred in its answer. For, although witness Harris admitted that he knew that Lowrey "was getting an F.H.A. loan" and "that it was necessary for the borrower * * * to show to the satisfaction of the F.H.A. that there were no liens against this property for labor or materials," there was no evidence that the loan by Mercantile was "an F.H.A. loan," or that the Lowreys furnished any "verified proof" to Mercantile, or (if they did) what statements were made in such "verified proof." Obviously, the case may not be determined on extraneous statements in Mercantile's brief.[14] We must take the record as we find it. Bennett v. Wood, Mo., 239 S.W.2d 325, 327 (2). "If hardships follow, the court is not responsible." In re McMenamy's Guardianship, 307 Mo. 98, 270 S.W. 662, 668(9).

The judgment should be and is affirmed.

McDOWELL, P. J., and RUARK, J., concur.

App. 343, 353(1); 57 C.J.S., Mechanics' Liens, § 226a, p. 798. See and compare also Allen Estate Ass'n v. Fred Bocke & Son, 300 Mo. 575, 254 S.W. 858, 863(3); Davidson v. Fisher, Mo.App., 258 S.W.2d 297, 303(8); Dickinson v. Gault, supra, 229 S.W.2d loc. cit. 284; Westinghouse Air Brake Co. v. Kansas City Southern R. Co., 8 Cir., 137 F. 26, 36–37(6).

13. State ex rel. State Social Security Commission v. Butler's Estate, 353 Mo. 14, 181 S.W.2d 768, 771(9); Powell v. Pinkley, Mo., 180 S.W.2d 745, 748(5); State

ex rel. City of Maplewood v. Southern Surety Co., 323 Mo. 150, 19 S.W.2d 691, 693(1); Estes v. Nell, 140 Mo. 639, 41 S.W. 940, 942(3); Friedman v. United Rys. Co. of St. Louis, Mo.App., 254 S.W. 556, 559(6).

14. Pruitt v. St. Johns Levee & Drainage Dist., 341 Mo. 120, 106 S.W.2d 467, 471 (5); Heitzeberg v. Von Hoffmann Press, 340 Mo. 265, 100 S.W.2d 307, 310(6); Adelsberger v. Sheehy, 332 Mo. 954, 59 S.W.2d 644, 647(4); Berkshire v. Holcker, supra, 216 S.W. loc. cit. 563(15).