**Emily POORE et al., Respondents,**

v.

**INTERNATIONAL PAPER COMPANY et al., Appellants.**

**Nos. 25301–25303.**

Kansas City Court of Appeals, Missouri.

June 1, 1970.

Warren E. Slagle, Slagle & Bernard, Kansas City, for appellant International Paper Co.

Charles N. Bono, Berman, DeLeve, Kuchan & Chapman, Kansas City, for appellant Durbin Corporation.

Lyle McClain, Kansas City, for appellants Doors, Inc. and Warren E. Newton.

Thomas M. Sullivan, Edward L. Fitzgerald, Downey, Sullivan & Fitzgerald, Kansas City, for respondents.

MAUGHMER, Commissioner.

In this action Emily Poore, owner of Lot 3, Block 4, Linden Hill, an addition in Kansas City, Jackson County, Missouri, her husband Fred Poore Johnson County National Bank and Trust Company, mortgagee, and Milton F. Barlow, trustee in the deed of trust, as plaintiffs, sought a declaratory judgment invalidating numerous materialmen's liens, which had been filed against the property. All of the lien claims except four were settled or otherwise disposed of prior to trial. The remaining four and the

amounts of their claims are: International Paper Company, $3,979.42, Durbin Corporation, $239.74, Doors, Inc., $162.74 and Warren E. Newton, $84.35.

Each of these four remaining defendants filed an answer and cross-petition. In these cross-petitions it was alleged that: Materials of the reasonable value of the claimed liens were furnished; final deliveries were made during October, 1966; Jed K. Giles and Gloria V. Giles, husband and wife, were owners of the property at the time the materials were furnished; the materials were used in construction of a house on the property; demand for payment had been made upon Mr. and Mrs. Giles but refused; within six months after delivery, claims for mechanics' liens were filed, together with a description of the property and the names of the owners, and that these cross-petitions were filed within six months after the filing of the mechanic's lien statements. These cross-petitions joined Jed K. Giles and Gloria V. Giles as cross-petition defendants, and prayed for judgment against them for the amount of the alleged liens. The cross-petitioners also asked that their claims be declared to be liens against the property and be adjudged prior to the mortgage of the Johnson County National Bank and Trust Company. These lienholders concurrently filed affidavits alleging that Mr. and Mrs. Giles were nonresidents of Missouri and requested that an order for publication and for service by mail as to them, be entered. The order was made.

The transcript before us shows that on June 9, 1967, proof of "service by mail", was filed as to Jed K. and Gloria V. Giles. It is there recited that summons and copy of the petition were mailed to each by registered mail and that a return receipt showing receipt thereof by each was duly filed. On July 3, 1967, the affidavit of the publisher of The Daily Record, a newspaper published in Jackson County, Missouri, was filed, making proof of publication.

Proof as to compliance with all statutory prerequisite lien requirements was admitted by counsel for all of the plaintiffs. Mr. and Mrs. Giles never filed any pleading, nor made any admissions. However, the defendant lienholders made some proof in addition to their pleading averments. Mr. Sullivan, attorney for plaintiffs, admitted such compliance, and just prior to the commencement of a pretrial conference stated: " * * * the plaintiffs will waive any proof of the delivery, the installation and the value, whether at a contract price or in quantum meruit of and for any of the things for which liens are sought in this proceeding." He then said further that the plaintiffs "reserved three issues": (1) Whether the property was located in Washington or Kaw Township. This question, whatever it may have been, seems to have been abandoned and was not heard about further. (2) Possible question as to the time the liens were filed. This point, too, was apparently abandoned, and defendants' proof as to timeliness was not controverted. (3) Plaintiffs' claim that Gloria V. Giles, who with her husband, Jed K. Giles, was owner at the time the materials were furnished, "never participated in any of the contracts or in any of the orders for which liens are sought * * *", and therefore the property is not chargeable with any of the liens. Whether or not Mrs. Giles did so participate is the main point of controversy.

The case was tried to the court and without a jury. We, therefore, review as provided by Section 510.310, V.A.M.S., and Rule 73.01(d), V.A.M.R., that is, upon both the law and the evidence. The judgment will not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.

The court entered findings of fact and conclusions of law. It found specifically that Mr. and Mrs. Giles "were not served with process herein, and the Court has no jurisdiction over any claim asserted against them." The court found further that Gloria

V. Giles was not a party, directly or through the agency of her husband, to any of the contracts or orders for materials, and entered judgment for plaintiffs and against the defendants, and adjudged the four claimed liens to be invalid.

We cannot agree with the court's finding that Mr. and Mrs. Giles were not served with any process. They did receive "service by mail"—this is undisputed. Furthermore, we believe that Section 429.230, V.A.M.S., entitled "Judgment on constructive notice", accepts notice by publication in mechanic's lien matters and, when this type of service only is had upon the debtor, authorizes a judgment charging the property with the lien. We set forth the statute:

"When the debtor has not been served with summons according to law, and has not appeared, but has been lawfully notified by publication, the judgment, if for the plaintiff, shall be that he recover the amount of the indebtedness found to be due, and costs of suit, *to be levied of the property charged with the lien* therefor, which said property shall be correctly described in said judgment." (Italics ours.)

We understand that this statute authorizes a judgment for the amount of the lien but to be collected or enforced only against the property charged with the lien. The statute specifically says that under these circumstances it is "to be levied of the property charged * * *". Any possible belief that this statute authorized a personal judgment against the debtor, after only a notice by publication, is, we think, dispelled by the provisions of the immediately following statute. We quote Section 429.240, V.A.M.S., entitled "Judgment on personal service":

"When the debtor has been served with summons according to law, or appears to the action without service, the judg-

ment, if for the plaintiff, shall be against such debtor as in ordinary cases, with the addition that if no sufficient property of the debtor can be found to satisfy such judgment and costs of suit, *then the residue thereof be levied as provided in section 429.230.*" (Italics added.)

The appellant lienholders contend that they are entitled to a personal judgment against the debtors, Mr. and Mrs. Giles, based upon their notice by publication. They rely upon Shemwell v. Bettis et al., 264 Mo. 268, 174 S.W. 390, and this statement in that opinion:

"* * * In cases falling within the purview of that statute, and where it is strictly complied with, a court of general jurisdiction, in the classes of cases mentioned in the statute, obtains as much jurisdiction over the persons of nonresidents upon a publication regularly made as if they were personally served with process. * * *"

This Shemwell case was a suit to quiet title, where the statute authorizes publication, and as pointed out in the concurring opinion, must not be understood to apply to all types of suits. The case does not authorize a personal judgment in every type of case, on notice by publication alone. The opinion is not in point.

We believe that Section 429.230 clearly provides that service of notice by publication is only sufficient for a judgment, "to be levied of the property charged". We believe that Section 429.240 clearly provides that only where there is personal service or entry of appearance can a personal judgment be entered against the debtors, in which event the property charged may be utilized to collect only where the property of the debtor is insufficient to pay the judgment. This situation does not arise, of course, except in those instances where the debtors are *not* the present owners of the property. On this requirement of personal service for a personal judgment, we quote

from State ex rel. Dorn v. Morley, Mo., 442 S.W.2d 929, 930, a Supreme Court of Missouri, En Banc opinion:

" * * * The rule is elementary. It has always been the law of this state that a personal judgment cannot be rendered against a defendant (in the absence of his general appearance) unless there had been personal service of summons upon him for the required period of time before the return day. That rule has been so firmly established that it has rarely been challenged and hence there are not many cases discussing it. * * * "

We rule that defendant lienholders are not entitled to a personal judgment against the debtors, Mr. and Mrs. Giles, based upon notice by publication only. The long arm statute (506.500, V.A.M.S.) has no application to this case.

We shall now consider whether or not under the evidence Mrs. Gloria V. Giles did participate directly or through the agency of her husband in any of the contracts or orders for materials which are the subject matter of the claimed liens. The trial court found that she did not. This is the main issue. It has been hotly contested below and in this court. Its determination will resolve this appeal.

■ In Bryant v. Bryant Construction Company (Mo.App., St. Louis), 425 S.W.2d 236, 241, the court said:

"It may be taken as uncontroverted that where title to real estate is held under a tenancy by the entireties neither husband nor wife has the power to create a mechanics lien by his or her own individual act. E. C. Robinson Lumber Co. v. Lowrey, Mo.App., 276 S.W.2d 636, 640, * * * "

All parties to the lawsuit before us agree that the property involved was, at the time the materials were furnished, owned jointly by Jed K. Giles and Gloria V. Giles, husband and wife, as an estate by the entirety.

No party disputes the proposition that it takes both husband and wife to create a mechanic's lien—which principle was declared in the Bryant opinion, from which we have just quoted.

Based upon the evidence presented, it is apparent that Mrs. Giles did not directly order any of the materials or personally negotiate any of the contracts. Her husband performed these acts. Therefore, if she is to be ruled to have been a participant it must be by reason of a finding that her husband acted as her agent with her knowledge and acquiescence, or that by reason of her actions herein she is estopped to deny such agency.

Almost all of the facts must be gleaned from the pleadings and the admissions of counsel, made at various stages of the proceedings. Mr. Charles Robert Hendricks, who lived in Merriam, Kansas, was the only witness who testified. He was employed as a branch manager by the Charles F. Curry Company at the company office, 2026 West 76th Terrace, in Prairie Village, Kansas. He said that company had for a long time been associated with the defendant, Jed K. Giles, who was "an initial builder for a development known as Park Plaza, and also one known as Linden Hill," where the property involved here was located. He said the Curry Company in all of these developments handled "interim financing or construction loans" for Mr. Giles "throughout some period of time." He described what he called the "basic procedure" this way: "Mr. Giles would approach our company with the desire for a construction loan on a given property, and he would provide us with certain exhibits, being a set of plans, projected costs and things of this nature. We would, then, propose to him the dollar amount of loan we would be willing to make. Normally, this involved assistance to him in acquiring the ground." He said that the Linden Hill subdivision was a development by the Cebco Development Company and it was their practice to forward

a check representing 90% of the acquisition price of the lot, direct to Cebco; that they called this their first withdrawal on the construction loan and then the lot was conveyed. They required that the deed for the lot be in the names of both Jed·K. Giles and his wife, Gloria V. Giles, and that these grantees pay 10% of the purchase price. He testified that through a period of years between 40 and 50 loans like this were handled with Jed K. Giles and Gloria V. Giles.

We shall recite chronologically the actual events in this whole occurrence, in which Mrs. Gloria V. Giles took part: Defendants' Exhibit 4 is on a "Real Estate Contract" form, but is actually an offer by "Jed Giles, Builder" to build a residence on the property involved, similar to a residence located at another described address, for Fred Poore and Emily Poore, plaintiffs. This offer is signed by Jed K. Giles only and is not signed by Mrs. Giles or by either Mr. or Mrs. Poore. It bears the date of July 30, 1966. There is what is apparently a modified contract among the exhibits. It is dated _____ day of August, 1966, recites it is between Jed. K. Giles, Builder, and Fred Poore and Emily L. Poore, husband and wife. Its provisions are the same as in Exhibit 4, just described. This agreement is signed by Mr. and Mrs. Poore and by Jed K. Giles and Gloria V. Giles.

Defendants' Exhibit 8 is the construction loan application for a loan of $24,500.00. It is signed by both Mr. and Mrs. Giles and directed to the Curry Company. This construction loan was made and the proceeds used in part for construction of the house on the property. The deed for the lot was dated August 22, 1966, from Cebco, Inc., to Jed K. Giles and Gloria V. Giles, husband and wife.

Defendants' Exhibit 1 is the Deed of Trust, dated August 24, 1966, to Curry Company, and signed by both Mr. and Mrs. Giles. Mr. and Mrs. Giles both signed the "Payout Agreement" and it recites that it

is between "Charles F. Curry and Company * * *, lender", and "Jed K. Giles and Gloria V. Giles, husband and wife * * *, borrower." Mr. and Mrs. Giles bought hazard insurance for the construction period. They both signed an application for title insurance and both, under oath warranted that all bills for labor and material had been paid. They both signed the warranty deed transferring title to the plaintiffs, Mr. and Mrs. Poore. Both Mr. and Mrs. Giles signed the promissory note for the $24,500.-00 Curry Company loan. Additionally, according to the witness Mr. Hendricks, Mr. Giles and Mrs. Giles to the same extent as here, had travelled this same road—borrowed and constructed houses—some 40 or 50 times previously.

What is the cumulative effect of all of these actions in which Gloria V. Giles participated? Does it show that Mr. Giles was her agent in ordering materials for the house construction? Was she cognizant of what was going on? Did she know that she and Mr. Giles owned the lot, had contracted to build a house on it, had borrowed money from Curry and Company for construction costs? Did she know she was buying insurance during construction and that she was representing all construction costs as having been paid? Is she estopped to deny that her husband was her representative throughout this whole transaction? In our opinion the proper, fair and equitable answer to each of these questions is "Yes." Our appellate courts have considered similar examples where these questions were presented. We consider some of those opinions.

·Plaintiffs contend that Gloria V. Giles did not authorize her husband to order or contract for labor or materials and consequently the trial court correctly held that the materialmen's liens asserted herein are invalid. Plaintiffs rely largely on Dierks & Sons Lumber Company v. Morris et al., Mo.App., 404 S.W.2d 229, an opinion by this court. There the husband alone contracted to buy the lot, but took the deed

in his and his wife's name. The husband alone placed an order for the prefabricated house (the subject of the lien charge). He alone made application for an FHA loan, but his wife joined in execution of the deed and the promissory note. The husband alone made application for a "construction loan", the wife later joining and signing the deed of trust. The lender paid out the loan proceeds on requisitions from the husband alone. Both the wife and husband signed the warranty deed conveying to the present owners. The trial court refused enforcement of the lien. This court affirmed, and in the opinion quoted with approval as follows from Bauer et al. v. Phillips Pipe Line Company, Mo.App., 61 S.W.2d 425, 429 (where the facts were similar):

" * * * We may infer her act as arising from wifely duty or as an act to help her husband in the accomplishment of a purpose not coupled with her own. * *"

In the Bauer case too, the lien was refused. In the Dierks case, this court said:

" * * * Silence of the alleged principal is not a factor for consideration unless 'he knowingly allows another to assume to act for him.' * * *" citing C.J. S. on Agency.

These opinions are supportive of plaintiffs' contention, although we believe they are distinguishable from our case where the wife had followed the practice 40 or 50 times before, where she joined in making the offer, applying for the loan, signing the note, deed of trust, applications for insurance, filing affidavits of no mechanics' liens, and finally executing a warranty deed to the finished product.

Other Missouri courts have apparently been less inclined to keep a wife's liability under estates by the entirety under "protective custody", insofar as mechanics' liens are concerned.

We quote from Magidson v. Stern et al., 235 Mo.App. 1039, 148 S.W.2d 144, Syl. 6:

"Mechanics' liens

Evidence that wife joined with husband *in giving second trust deed on tenement property, which they owned by entirety,* in order to obtain funds for making of improvements thereon for purpose of enhancing rental value thereof, *showed that she concurred with husband in having work done for their mutual use and benefit as owners,* so as to entitle parties furnishing labor and material for construction of improvements to liens against property for amounts due them." (Italics added.)

In Bovard v. Owen et al., Mo.App., 30 S. W.2d 154, 156, this court declared the law in such cases in this language:

" * * * When a husband enters into a contract for the erection of buildings upon his wife's land, the fact that the wife takes a wifely interest in improvements being made on her property where she lives is not alone sufficient to estop her from denying that a contract made by her husband was for her benefit, nor to show that she ratified it, nor that the husband was her agent. Marshall v. Hall (Mo.App.) 200 S.W. 770. The rule is different if the wife gives a deed of trust on her property to raise means to be used by the husband in making the improvement. Boeckeler Lumber Co. v. Wahlbrink, 191 Mo.App. 334, 177 S.W. 741. * * *"

The opinion in Boeckeler Lumber Co. v. Wahlbrink et al., 191 Mo.App. 334, 177 S.W. 741, upheld the lien against the wife. We quote Syllabus 2.

"Where a husband errected a house on his wife's lot adjoining the premises whereon they dwelt, the wife knowing that the erection was intended for their home, and that the money, to secure

which she joined her husband in a deed of trust to the premises, was to complete the building, and she making no objection to the erection except to her husband, such husband's agency for her to subject her lot to the claims of a mechanics' lienor was established as matter of law by her estoppel to deny it."

Mrs. Mueller, the wife in Bryant v. Bryant Construction Co., Mo.App., 425 S.W.2d 236, 242, inspected the plans and selected cabinet colors—circumstances more strongly against her claim of no agency than in our case. However, the St. Louis Court of Appeals made this enlightening comment in approving the validity of the mechanic's lien:

"* * * The most significant of Mrs. Mueller's acts in relation to the question of implied agency was her execution of the note and mortgage for the purpose of financing the proposed improvements. * * *"

The Springfield Court of Appeals in E. C. Robinson Lumber Company v. Lowrey et al., Mo.App., 276 S.W.2d 636, 640 reached a quite similar conclusion and said:

"* * * the stipulated fact that Mrs. Lowrey executed such deed of trust tends to indicate her knowledge of and participation in the building project and is evidence of such character as has been considered significant and important in other cases. · * * *"

However, in this case too, the wife actively and directly participated in the selection of materials and signed receipts.

■ We refer now to the opinion in Hertel Electric Company, Inc. v. Gabriel (Mo.App., Spg.), 292 S.W.2d 95, 101. The court specifically declared that (1) the burden is on claimant of mechanic's lien to show compliance with essential statutory requirements, and (2) mechanic's lien statutes being remedial in character, should be con-

strued liberally to carry out their just and beneficent objects. The opinion cites other cases enunciating these expressions. The litigants before us have not agreed as to where the burden of proof rested or whether the statutes should be strictly or liberally construed. We have, therefore, referred to Hertel as authority for our holding here, (1) the burden rests upon the lien claimants, but (2) the statute being remedial, should be liberally construed to effectuate its beneficent purposes.

■ In the case before us first knowledge of the whole affair came to Mrs. Giles while title to Lot 3, Block 4, Linden Hill, was in Cebco. She participated in her own name thereafter in all of the transactions affecting title. She was named with her husband jointly in the deed from Cebco, she signed the modified or amended offer to build a house thereon for Mr. and Mrs. Poore. She signed the deed of trust and promissory note to Curry and Company for $24,500.00, which was to be used to pay construction costs, and she signed the payout agreement for this money. She jointly applied for insurance during construction. She made application with Mr. Giles for title insurance and declared that all charges for materials and construction labor had been paid. Finally, she executed a warranty deed to Emily Poore for the lot and house for about $28,000.00 more than the lot had cost her and her husband a few months earlier.

Although there is no evidence that Mrs. Giles personally ordered or signed any orders for purchase of any of the materials for which liens are claimed, there can be no doubt but that she knew construction was contemplated. She collaborated in buying the lot, borrowing the money to build, authorizing Curry and Company to pay out, and in buying construction insurance. She signed the warranty and trust deeds and declared all building costs were paid. Moreover this was a process which she and her husband had gone through some 40 or 50 times before. It would be absurd to say

that she was not fully cognizant of everything that transpired. She knew they were building a house to sell to Mr. and Mrs. Poore. She knew the construction would cost money and that the Curry loan was to provide that money. She knew materials would be bought and she knew her husband was buying materials. To conclude that her activities were merely in discharge of her "wifely duties" and that her husband was not acting in her behalf, as well as his own, and with her full knowledge and authorization, would in our opinion, be a wholly unjustified conclusion. To deny application of the mechanic's lien statute, a remedial law, here would be a travesty upon the principles of equity and justice. The cases cited herein upholding the lien, where the issue was the wife's participation, hold that signing the note and deed of trust for the construction loan, is by itself just about sufficient to estop the wife from denying her husband's agency or successfully invalidating the mechanic's lien. A great jurist once said that if it is not reason, it is not the law. We should try to adhere to that principle. In our opinion the validity of the liens involved herein ought to be, and they are, upheld.

The lien claimants ask for an allowance of interest. We find no actual proof as to when demands for payment were made. We shall treat the filing of the cross-petition on or before June 16, 1967, as demands for payment.

Therefore, the judgment as to Jed K. Giles and Gloria V. Giles is affirmed; the judgments as to the four lien claimants are reversed and the cause is remanded with directions. The court is directed to enter judgments for each of the four lien claimants for the amount of their claimed liens with interest at 6% per annum from June 16, 1967 until paid, said judgments to be superior to the mortgage of the plaintiff Johnson County Bank and Trust Company, and to be under the provisions of Section 429.230, supra, that is, that the claimants recover such amounts with cost of suit, "to be levied of the property charged with the lien."

SPERRY, C., concurs.

PER CURIAM.

The foregoing opinion by MAUGHMER, C., is adopted as the opinion of the Court.

All concur.