Willard J. STOCKMAN, d/b/a Willard J. Stockman Construction Co., Respondent,

v.

The ESTATE of Guy A. SHELTON et al., Appellants.

No. KCD 26990.

Missouri Court of Appeals, Kansas City District.

Aug. 4, 1975.

Tweedie Fisher, Jefferson City, for appellants.

Carson, Inglish, Monaco & Coil, Michael P. Riley, Jefferson City, for respondent.

Before SWOFFORD, P. J., and ROBERT R. WELBORN and ANDREW JACKSON HIGGINS, Special Judges.

ANDREW JACKSON HIGGINS, Special Judge.

Appeal from judgment for $4,634.47, declared to be a lien on real estate owned by defendant M. Marie Shelton.

Plaintiff alleged: that in February, 1972, at the specific request of defendants Guy A. and M. Marie Shelton, plaintiff commenced remodeling a structure on described property also known as 315 East McCarty Street, Jefferson City, Cole County, Missouri, owned by Guy A. and M. Marie Shelton; that construction was under one entire contract; that the balance due and owing for work, labor and materials was $4,634.47; that plaintiff duly recorded his Statement of Mechanic's Lien. Plaintiff prayed the court: to declare the rights of the parties, to declare the balance due and owing to be a lien on the described property, for judgment against defendants for the balance due, and for sale of the property to satisfy the lien.

Defendant M. Marie Shelton answered by general denial.

The court found: that defendant M. Marie Shelton was the wife of Guy A. Shelton until his death April 10, 1972; that prior to his death they owned the described property as tenants by the entirety; that defendant M. Marie Shelton, upon the death of her husband, became the sole owner of the property; that there is no estate of Guy A. Shelton; that plaintiff, at the specific re-

quest and authorization of the defendant, commenced construction on the property February 23, 1972; that defendant M. Marie Shelton continued the work after the death of Guy A. Shelton; that the last work was performed July 14, 1972, under one entire contract; that the balance due and owing plaintiff by defendant M. Marie Shelton is $4,634.47; that plaintiff duly filed his Statement of Mechanic's Lien within the time prescribed by law. The court ordered, adjudged and decreed: that plaintiff have and recover $4,634.47 from defendant M. Marie Shelton, together with interest from July 14, 1972; that same be declared a lien upon the described property; that the cause be dismissed as against the Estate of Guy A. Shelton and M. Marie Shelton, Administratrix; that costs be taxed against defendant M. Marie Shelton. Plaintiff does not appeal the dismissals.

■ The case was tried by the court without a jury and is thus for review upon both the law and the evidence with due regard to be given to the opportunity of the trial court to have judged the credibility of witnesses. Rule 73.01.3(a)(b), V.A.M.R.

A sheriff's deed in partition showed the property to have been purchased by Mr. Shelton and titled to Guy A. Shelton and M. Marie Shelton, his wife, January 20, 1972.

Plaintiff Willard J. Stockman is the sole proprietor of and does business as Willard J. Stockman Construction Co. in Jefferson City, Missouri. He did work on property belonging to Mr. and Mrs. Guy Shelton at 315 East McCarty, Jefferson City, Missouri, beginning in February, 1972, and finishing in July, 1972. He had one or more men on the job each week throughout the period. The work was general renovation, repairs, new roof, front door and steps, fourteen interior doors. Some painting and plumbing were done and stairway improvements were discussed. All work was done under oral cost-plus-ten-percent contract. He got his instructions "generally from Mr. Shelton. But Mrs. Shelton was there originally and on the final end of it after Mr. Shelton

passed away. * * * He came in periodically * * * almost weekly, and sometimes his wife was with him and sometimes not. * * * Anytime he wouldn't give us a direct order, I would have to check back with Mrs. Shelton." He identified his material list, suppliers' names, labor, and balance due of $4,634.47. The final bill was sent to Mrs. Shelton July 11, 1972. Mr. Shelton died April 10, 1972. He met with Mrs. Shelton at her attorney's office in Kansas City and presented her with the statement and accompanying bills. " * * other conversation was whether to finish up what was going on and get it ready for either rental or try to sell it, *et cetera.*" He "was supposed to be let know" how to proceed. No such notification was received.

LeRoy Stockman is a brother of Willard Stockman and is a carpenter foreman for the Willard Stockman Construction Co. He worked on the project in question approximately six months. Mr. Shelton called him in January, 1972, to lock the place; he met Mr. Shelton there, changed the locks, and installed a new front door. He saw Mr. Shelton practically every weekend after the original meeting. The Willard Stockman Construction Co. began work on the premises in February, 1972. Mr. and Mrs. Shelton lived in Independence and came to Jefferson City on weekends. "She was there in the building one particular time and twice that she came through." The first time he met Mrs. Shelton, "the plasterers were there, and I was working on some door, and Mr. Shelton introduced me, and they talked about what was going on, the plastering, how they were finishing it." Some of the workmen on the job were sent down from Kansas City to do work other than that performed by Stockman employees. On one occasion, "We was preparing to close in the fireplaces and the stairways going upstairs were discussed at that time when she was there." The discussion covered whether to "brick in" the fireplaces, and whether to paint or varnish the stairway. When he first met Mrs. Shelton on the premises, the conversation between him and Mr. and Mrs.

Shelton covered "general overhaul of the building. How this was being done and that was being done. And he was pointing it out to her. * * * She mostly agreed with him on what was going on." She made suggestions. The conversation about the fireplaces and stairway occurred about ten days prior to Mr. Shelton's death. Mr. Shelton died April 10, 1972, and Mrs. Shelton called Mr. Stockman about a week later. "She informed me of Mr. Shelton's death. And at that time she said, we would have to finish the work that was started and would I go ahead and take care of it. * * * I told her, I would. * * * about a week later we had a conversation on the phone, and she informed me at that time to go ahead and also I should contact a realtor to try to lease or sell the property." He kept her advised of the progress of the work. She also sent a plasterer and a painter to the job from Kansas City. The job was finished and the keys were given to Mrs. Shelton's realtor in Jefferson City. Work remaining to be done after Mr. Shelton's death included the doors, plumbing, painting, sash cords, and base and trim around doors and windows. There was never any notice that the work should not be done by Mr. or Mrs. Shelton or by anyone purporting to be an agent for either of them.

Marie Shelton first learned of the purchase of the property in question "when he came home and told me he had bought it. * * * he said he was not going to let it go for nothing, that if he had to he would buy it. And I, at that time, told him I was very much against buying property in Jefferson City * * * because the memory that I have of Jefferson City is not pleasant." He borrowed the money to purchase the property and she left its renovation in his hands. Her version of the purpose of the call to LeRoy Stockman after her husband's death was to advise "that my husband had just passed away on April 10, and that I would prefer they didn't do any more because I didn't know anything about what was going on and I had to find out." She

knew her husband was going to Jefferson City every weekend to visit the property. She was on the project twice in February. On one occasion she observed a workman from Independence spraying walls and commented that he was doing a nice job. She did not tell any workman to leave the job. Around the first of July, 1972, she did some painting at the property and actively participated in the remodeling after her husband's death. A letter in evidence from her attorney to Willard Stockman, dated July 26, 1972, showed no objection to the work. She told LeRoy Stockman to take the key to the premises to Jordan Realty Company for purposes of appraisal and possible sale. Mrs. Shelton is a businesswoman and sole operator of Consolidated Funerals, Incorporated, a million dollar pre-need funeral plan in which she had managed and supervised as many as twenty employees.

Appellant does not question the amount of the judgment; she contends that the court erred "because under the competent and substantial evidence and reasonable inferences therefrom, plaintiff failed to prove that defendant M. Marie Shelton specifically requested and authorized the plaintiff to commence construction and that work was performed under one entire contract." She cites *Poore v. International Paper Company*, 455 S.W.2d 13 (Mo.App.1970), and *E. C. Robinson Lumber Company v. Lowrey*, 276 S.W.2d 636 (Mo.App.1955), to argue that since a mechanic's lien cannot be created by a spouse acting independent of the other spouse or by his or her own individual act, the evidence must be viewed to determine whether agency existed between Mr. and Mrs. Shelton, and asserts the evidence to be insufficient for that purpose. She also cites *Marshall v. Hall*, 200 S.W. 770 (Mo.App.1918), to assert that silence on her part does not prove her to be a party to the contract between plaintiff and her husband; and *E. C. Robinson Lumber Company v. Lowrey, supra*, and *Bybee v. Dixon*, 380 S.W.2d 539 (Mo.App.1964), to assert that plaintiff can get no support by way of

estoppel or ratification because neither was pleaded.

■ The evidence shows that Mrs. Shelton did not directly order any of the materials and labor furnished to the project by plaintiff or negotiate the agreement with plaintiff. Her husband accomplished those acts. Thus, if she is to be held as a participant it must be by evidence showing that her husband acted as her agent with her knowledge and acquiescence, or by evidence of actions by which she is estopped to deny the agency or her participation.

There is no question that Mr. and Mrs. Shelton acquired the property as tenants by the entirety in January, 1972, and that upon her husband's death April 10, 1972, she became the sole owner of the premises. Mrs. Shelton is a successful businesswoman in her own right; and, despite her dislike for owning property in Jefferson City, would like to have subject property in its renovated state free and clear of the cost of renovation. It is not disputed that a contract existed between plaintiff and Mr. Shelton. Mrs. Shelton accompanied her husband to Jefferson City and was on the premises on at least three occasions when she saw work in progress and participated in discussion concerning work under way or to be done. It is a fair inference that after her husband's death, she called LeRoy Stockman, plaintiff's agent and foreman, and authorized him to finish the work that had been started. She also participated in the remodeling, including her own labor and bringing workmen with her from Kansas City. Toward completion of the project she requested the contractor to deliver the keys to her realtor. Considerable materials and labor were supplied on the project between April 10 and July 11, 1972. In the conference concerning payment of plaintiff's statement and in the letter from defendant's attorney to plaintiff, there was no denial of the statement; the only request was for the supporting bills to be supplied. At no time was there a protest concerning the work or a denial of responsibility for the amount due plaintiff.

In these circumstances it would be difficult to say that Mrs. Shelton was not cognizant of everything that transpired. She knew that her husband had acquired the property; that renovation was in progress; that materials were on the job and that labor was being performed. To say that her activities were only a "wifely interest" in her husband's affairs, *Marshall v. Hall, supra,* 200 S.W. l. c. 775[1], *Dierks & Sons Lumber Company v. Morris,* 404 S.W.2d 229 (Mo.App.1966), and that her husband was not acting in her behalf, as well as his own, and with her full knowledge and authorization, would be unjustified. To deny plaintiff the benefits of the mechanic's lien statute, a remedial law, would be an offense against its equitable purpose, *Herrman v. Daffin,* 302 S.W.2d 313, 316[3] (Mo.App. 1957). If there was any doubt about Mrs. Shelton's participation in the project prior to her husband's death, it was dispelled by her authorization and direction to the contractor to finish the work in progress after his death. See *E. C. Robinson Lumber Company v. Lowrey, supra; Poore v. International Paper Company, supra.*

■ Mrs. Shelton's acts following her husband's death are in the nature of ratification and support an estoppel against her; however, it was not necessary to plead either because they were not the grounds of recovery, and both were but circumstances bearing on the question whether Mrs. Shelton's participation in this project was sufficient to subject her property to a mechanic's lien for the cost of the project. *E. C. Robinson Lumber Company v. Lowrey, supra,* 276 S.W.2d l. c. 641–642[8–13].

Judgment affirmed.

All concur.